COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


CURTIS R. SELLERS, HARVEY §
DEVELOPMENT CO., INC., and TONY
AGUILAR, §

No. 08-05-00308-CV

Appellants, §

Appeal from the

v. §

120th Judicial District Court

§

MARCELO GOMEZ, Individually and as     of El Paso County, Texas
Purported Trustee, MICHAEL AINSA, §
and AINSA HUTSON L.L.P., (TC# 2004-1373)

§

Appellees.

§

**O P I N I O N**

Curtis Sellers and Harvey Development Co., both licensed real estate brokers, demanded

compensation from Marcelo Gomez for their services in the sale of the Park Cinema Theater in

El Paso.  Mr. Gomez refused because there was no signed commission agreement.  Mr. Sellers

and Harvey Development sued Mr. Gomez and his attorney, Michael Ainsa, for theft of services,

fraud, breach of fiduciary duty, and conspiracy.  The trial court granted summary judgment in

favor of Mr. Gomez and Mr. Ainsa.  The trial court also ordered Mr. Sellers, Harvey

Development, and their attorney, Tony Aguilar, to pay $80,000 in sanctions to Mr. Gomez and

Mr. Ainsa.  Mr. Aguilar, Mr. Sellers, and Harvey Development present seven issues for review.

In Issues One through Five, they challenge the trial court's grant of summary judgment.  In Issues

Six and Seven, they challenge the trial court's award of sanctions.  We affirm the trial court's

judgment.

Appellants Mr. Sellers and Harvey Development are both licensed real estate brokers. Appellee Mr. Gomez owned the Park Cinema in El Paso. In the mid-2002, Mr. Sellers and Harvey Development submitted an unsolicited offer to Mr. Gomez on behalf of Currey Adkins, an IT supply company, to purchase the Park Cinema for $1,200,000. The written offer listed Harvey Development as the principal broker and Mr. Sellers as the cooperating broker. Under the terms of the offer, Mr. Sellers and Harvey Development would each receive a three-percent real estate commission. Mr. Gomez did not accept the offer.

In December 2002, Mr. Sellers and Harvey Development sent Mr. Gomez another unsolicited offer on behalf of Currey Adkins, this time to purchase the Park Cinema for $1,650,000. Mr. Gomez did not accept the second offer.

In April 2003, Mr. Gomez asked Miriam Lawrence, his cousin and an employee of Harvey Development, to find out whether Currey Adkins would increase its second offer. Ms. Lawrence contacted Currey Adkins and learned that it was unwilling to go higher than $1,650,000 at that time. On April 9, 2003, Will Harvey, the president of Harvey Development, sent Ms. Lawrence a memo saying that $1,650,000 was Currey Adkins's top offer, and that April 16, 2003 was the deadline for a response. According to Mr. Sellers's deposition, Ms. Lawrence indicated that Mr. Sellers and Harvey Development would be compensated for their services. However, when asked whether Ms. Lawrence had verbally promised to pay them, Mr. Sellers testified that he could not remember. Mr. Gomez did not accept the third offer.

On July 8, 2003, at Currey Adkins's request, Mr. Harvey sent a memo to Mr. Gomez. The memo stated that Currey Adkins was still interested in purchasing the Park Cinema, and that Mr. Gomez should contact Mr. Harvey no later than July 21, 2003. Mr. Gomez did not respond

to this memo.

On July 11, 2003, Mr. Gomez engaged Michael Ainsa, a partner at the law firm of Ainsa Hutson, L.L.P., to represent him in connection with the possible sale of the Park Cinema. Prior to that date, Mr. Ainsa had not been involved in the sale of the Park Cinema, and he had not spoken to Mr. Sellers or Harvey Development about the sale. Mr. Ainsa testified that he had not done any active legal work for Harvey Development since 2001, although his firm handled some document-preparation work for the company on a case-by-case basis between February 2001 and February 2004. Mr. Ainsa never did any legal work for Mr. Sellers.

On July 14, 2003, Mr. Harvey called Mr. Ainsa. Mr. Ainsa explained that he was representing Mr. Gomez and would negotiate a contract with Currey Adkins for the sale of the Park Cinema. Mr. Ainsa also told Mr. Harvey that Mr. Gomez did not intend to pay a real estate commission to Mr. Sellers or Harvey Development. Mr. Ainsa explained that absent a written agreement signed by Mr. Gomez, Mr. Gomez was not obligated to pay the commission. During the conversation, Mr. Ainsa indicated that he was not representing Harvey Development in the matter. However, Mr. Sellers testified that at some point, Mr. Ainsa indicated to him that Mr. Sellers and Harvey Development would be compensated for their services.

Mr. Gomez sold the Park Cinema to Currey Adkins in October 2003 for approximately $1,900,000. No real estate commission was paid to any broker. On February 19, 2004, Harvey Development's attorney, Tony Aguilar, sent a letter to Mr. Gomez concerning the sale of the Park Cinema. Mr. Aguilar wrote that funds were still owed to Harvey Development and that he had "found a way to file a lawsuit if necessary." At Mr. Gomez's request, Mr. Ainsa contacted Mr. Aguilar and asked how he intended to file a lawsuit, since the Real Estate License Act

requires a signed written agreement for a real estate commission. *See* TEX.OCC.CODE ANN. § 1101.806(c)(Vernon 2004). Mr. Aguilar replied that he had "found a way to get around the Real Estate License Act."

On March 26, 2004, Mr. Sellers and Harvey Development filed suit against Mr. Gomez and Mr. Ainsa, alleging theft of services and fraud.[1] On December 14, 2004, Harvey Development filed its first amended petition, adding Ainsa Hutson as a defendant and alleging theft of services, fraud, conspiracy, breach of fiduciary duty, and failure to inform. Harvey Development sought actual damages of $120,000, statutory damages of $1,000 each, exemplary damages, and attorney's fees.

In their answer, Mr. Gomez and Mr. Ainsa generally denied these claims, raised special exceptions, and asserted an affirmative defense under the Texas Real Estate License Act. They also raised a counterclaim alleging that the lawsuit was frivolous.

On July 11, 2005, Mr. Gomez and Mr. Ainsa filed a motion for partial summary judgment, requesting that the Court dispose of all of Harvey Development's claims, but not their own counterclaims. In the motion, Mr. Gomez and Mr. Ainsa characterized the case as an action to recover a real estate commission, disguised as an action for civil theft. They argued that the Texas Real Estate License Act precluded Mr. Sellers from recovering a commission, regardless of how the damages were characterized. Mr. Gomez and Mr. Ainsa argued that Mr. Sellers could not recover under the Theft Liability Act, because Mr. Sellers could not establish that Mr. Gomez agreed to pay for the services. Mr. Gomez and Mr. Ainsa also argued that Mr. Ainsa and Ainsa

---

[1] Appellants Mr. Sellers and Harvey Development Co. will subsequently be referred to as "Harvey Development."

Hutson could not be liable for breach of fiduciary duty or failure to inform because Mr. Ainsa never represented Harvey Development in the Park Cinema sale.

In its response to the motion, Harvey Development argued that Mr. Gomez could not use the Real Estate License Act as a defense, because the Act's requirement of a writing applies only to real estate commission, not all compensation. *Compare* TEX.OCC.CODE ANN. § 1101.806(b) (prohibiting a person from collecting "compensation for an act as a broker or salesperson" unless the person holds a license or is an attorney) *with* TEX.OCC.CODE ANN. § 1101.806(c)(prohibiting the recovery of "a commission for the sale or purchase of real estate" in the absence of a signed commission agreement). Harvey Development also argued that a written document is not required under the Theft Liability Act, and that a jury could infer intent to avoid payment based on Mr. Gomez's and Mr. Ainsa's actions. Finally, Harvey Development argued that Mr. Ainsa and Ainsa Hutson owed a fiduciary duty to Harvey Development because Ainsa Hutson was representing Harvey Development at the time of the sale. The trial court granted Mr. Gomez and Mr. Ainsa's summary judgment motion.

In August 2005, Mr. Gomez and Mr. Ainsa filed motions for sanctions against Harvey Development, seeking attorney's fees for Harvey Development's frivolous lawsuit. Mr. Gomez and Mr. Ainsa voluntarily dismissed their counterclaims without prejudice. At some point, Harvey Development's attorney, Mr. Aguilar, was added to the motion for sanctions. Then Harvey Development and Mr. Aguilar filed their own motion for sanctions, arguing that Mr. Gomez and Mr. Ainsa's motions for sanctions were frivolous and seeking their own attorney's fees. After a hearing on the motions, the trial court awarded sanctions to Mr. Gomez and Mr. Ainsa in the amount of $80,000.

In the order granting the motion for sanctions, the trial court limited its conclusions of law to the actions for fraud and theft of services, and did not address Harvey Development's other claims.  In a nine-page order, the trial court made twenty-eight findings of fact and ten conclusions of law.  One findings of fact was that neither Mr. Gomez nor Mr. Ainsa made any representations regarding compensation for the services provided by the plaintiffs.  The trial court also made findings of fact indicating that the plaintiffs knew prior to filing the lawsuit that there were no actions by Mr. Gomez or Mr. Ainsa to intentionally and knowingly secure performance of the brokerage services by deception, threat, or false token.  In its conclusions of law, the trial court concluded that none of the defendants violated the Theft Liability Act, and that the plaintiffs had no basis in law or in fact to file a theft-of-services or fraud claim against any of the defendants.  The trial court found that Mr. Aguilar and Harvey Development violated Chapter 10.001(3) of the Civil Practice & Remedies Code, because the theft and fraud claims in the plaintiffs' petition lacked any evidentiary support.

**Summary Judgment Motion**

In its first five issues, Harvey Development challenges the trial court's grant of summary judgment.

We review summary judgments *de novo*.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).  In this case, Mr. Gomez and Mr. Ainsa filed a "traditional" motion for summary judgment under Rule 166a(c) of the Texas Rules of Civil Procedure.  When reviewing a traditional summary judgment, we view the evidence in the light most favorable to the nonmovant and resolve any doubts against the motion.  *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006).  We must consider whether reasonable and fair-minded jurors

could come to different conclusions considering all the evidence presented. *See id*. When, as in this case, the trial court's order does not specify the ground upon which it relied for its ruling, we must affirm the judgment if any of the theories asserted in the motion is meritorious. *Garcia v. El Paso Ltd. P'ship*, 203 S.W.3d 432, 435 (Tex.App.--El Paso 2006, no pet.).

In Issue One, Harvey Development argues that the trial court erred in holding that the Texas Real Estate License Act is an affirmative defense to a theft-of-services action under the Theft Liability Act.

The Real Estate License Act provides: "A person may not maintain an action in this state to recover a commission for the sale or purchase of real estate unless the promise or agreement on which the action is based, or a memorandum, is in writing and signed by the party against whom the action is brought or by a person authorized by that party to sign the document." TEX.OCC.CODE ANN. § 1101.806(c).

In *Trammell Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 635 (Tex. 1997), the Texas Supreme Court held that this section of the Real Estate License Act precluded a real estate broker's action for tortious interference to recover a commission. In that case, Hunt Products, a prospective tenant, hired Patterson/McLaine Group, Inc. to locate rental space. *Id*. at 632. In turn, Patterson/McLaine authorized William Harkinson, a real estate broker, to act as its exclusive representative in locating the space. *Id*. Under his agreement with Patterson/McLaine, Mr. Harkinson was supposed to obtain his commission from the owner of the rental space. *Trammell Crow*, 944 S.W.2d at 632. Mr. Harkinson negotiated a lease under which Hunt Products would lease property owned by Trammell Crow. *Id*. Trammell Crow sent Mr. Harkinson an unsigned commission agreement. *Id*. Mr. Harkinson redrafted the agreement,

signed it, and returned it to Trammell Crow. *Id*. A Trammell Crow employee told Mr. Harkinson that a supervisor would sign the agreement, but no one signed it. *Id*. Meanwhile, without Mr. Harkinson's knowledge, Patterson/McLaine entered into an agreement with Trammell Crow, whereby Patterson/McLaine would pay Mr. Harkinson a vastly reduced commission, and Trammell Crow would pay him nothing. *Id*. at 632-33. Harkinson sued Trammell Crow and Patterson/McLaine for tortious interference with his oral commission agreement, tortious interference with his exclusive-representation agreement, and civil conspiracy. *Id*. at 633.

The Texas Supreme Court noted that Mr. Harkinson did not have a signed commission agreement as required by the Real Estate License Act. *Id*. The Court held that this barred his action for tortious interference with the oral commission agreement. *Id*. at 635. The Court noted that "Harkinson's claims, though couched in terms of a tort, are for the recovery of a real estate commission." *Id*. at 633. Significantly, the Court barred Mr. Harkinson's tortious-interference claim against Patterson/McLaine, a third party that never entered into any commission agreement with Mr. Harkinson. *Id*. at 634. The Court also examined Mr. Harkinson's use of promissory estoppel to attempt to recover the commission and stated, "As a licensed real estate broker, Harkinson cannot act or forbear from acting in reliance on anything less than a signed written commission agreement. When a broker does so and relies on a promise to sign a written agreement that would satisfy section [1101.806(c)],[2] the broker inevitably does so at his or her

---

[2] The Court in *Trammell Crow* cites the old version of the Real Estate License Act, before the Act's repeal and recodification in the Occupations Code. Although the current section has undergone cosmetic changes, it is materially identical to the old version. *See* TEX.REV.CIV.STAT.ANN. art. 6573a, § 20(b)(Vernon Supp. 1997)(repealed 2003)(current version at TEX.OCC.CODE ANN. § 1101.806(c)(Vernon 2004).

own peril." *Trammell Crow*, 944 S.W.2d at 636-37.

The Supreme Court applied the same reasoning to Mr. Harkinson's claim of tortious interference with his exclusive-representation agreement, and held that this claim was barred as well. The Court noted: "As we read Harkinson's claim, he asserts that had [Trammell Crow] not interfered with his exclusive representation agreement, he would have been paid his commission as the exclusive representative negotiating a lease for Hunt Products . . . . The loss of the opportunity to negotiate exclusively on behalf of Hunt Products in this instance translates only into the loss of the expectancy of receiving a commission at the end of the lease negotiations." *Id.* at 634. In other words, because Mr. Harkinson could not prove up damages apart from the lost commission, he was barred from any cause of action that sought the commission as damages. Even if Mr. Harkinson had proven a breach of his exclusive-representation agreement, his claim would still have been barred as "illusory and wholly derivative of his unenforceable oral commission agreement." *Id*.

In this case, Harvey Development argues that the holding in *Trammell Crow* applies only to common law causes of action, rather than statutory causes of action. Harvey Development points to language in the opinion stating that Mr. Harkinson's claims "are barred by section [1101.806(c)] unless saved by some other law." *Trammell Crow*, 944 S.W.2d at 634. However, following this statement, the Court goes on to discuss the "other law" that, according to Mr. Harkinson, preserves his claim. *Trammell Crow*, 944 S.W.2d at 634-35. In particular, the Court discusses *Clements v. Withers*, 437 S.W.2d 818 (Tex. 1969), a case that interpreted the same section of the Real Estate License Act at issue in *Trammell Crow*, 944 S.W.2d at 634-35. This indicates that the "other law" that can save this kind of action is case law interpreting the

Real Estate License Act itself. Nowhere in the *Trammell Crow* opinion does the Court distinguish between statutory and common law causes of action. What is clear from the opinion, however, is that "a broker may not recover a commission unless the commission agreement is in writing and signed by the party to be charged." *Id.* at 635.

Much like Mr. Harkinson, Harvey Development has attempted to couch a claim for recovery of a commission in terms of tort law. The $120,000 that Harvey Development seeks is nearly equal to the $114,000 it would have received if the property had been sold at $1,900,000 and Harvey Development had received a six-percent commission. The following excerpt from Mr. Harvey's deposition reveals how Harvey Development calculated this figure:

Q: Well, what basis do you have for picking 120, then?

A: We felt it was a reasonable figure.

Q: So it was pulled out of the air?

A: It approximates a real estate commission, or what a real estate commission would have been, had one been charged.

Q: So, in fact, that is basically what you're using as a frame of reference, a real estate commission?

A: You've got to start someplace.

Q: Well, is that what you're using? I'm asking you the question.

A: Yes.

Although Harvey Development tries to frame its action as one for compensation rather than commission, it does not define the scope of the term "compensation" or explain how it was calculated, apart from substituting what the commission would have been. Nor does Harvey Development explain how its actions against Mr. Ainsa and Ainsa Hutson for breach of fiduciary

-10-

duty, failure to inform, fraud, and conspiracy relate to any damages other than the lost commission.

This Court has noted that the purpose underlying the Real Estate License Act's requirement of a signed commission agreement is "to prevent fraud arising from parol testimony as to the terms and conditions of such contracts." *American Garment Props., Inc. v. CB Richard Ellis–El Paso, L.L.C.*, 155 S.W.3d 431, 436 (Tex.App.--El Paso 2004, no pet.), *quoting Denman v. Hall*, 144 Tex. 633, 636, 193 S.W.2d 515, 516 (1946). In the instant case, Harvey Development relies strictly on the alleged statements of Ms. Lawrence and Mr. Ainsa indicating that Appellants would be compensated for their services. Significantly, they do not rely on the unsigned commission agreements from 2002, as this would undermine their argument that they are seeking compensation other than commission. Allowing them to proceed would essentially allow them to construct an enforceable commission agreement out of an alleged oral agreement, directly contrary to the purpose underlying the requirement of a signed commission agreement.

Under the facts of this case, where Harvey Development has admitted that the damages it seeks approximate a real estate commission, we hold that Harvey Development's actions are barred by the Real Estate License Act's requirement of a signed commission agreement. This includes not only the actions seeking compensation for services performed, but also the claims of breach of fiduciary duty, failure to inform, fraud, and conspiracy. Issue One is overruled, and we decline to address Issues Two through Five.

**Sanctions**

In their final two issues, Mr. Aguilar and Harvey Development challenge the trial court's award of sanctions, arguing that the sanctions are excessive and that there was insufficient

-11-

evidence to support the award.

We review a trial court's award of sanctions under an abuse-of-discretion standard. *Finlay v. Olive*, 77 S.W.3d 520, 524 (Tex.App.--Houston [1st Dist.] 2002, no pet.). A trial court abuses its discretion in imposing sanctions if the order is based on an erroneous view of the law or a clearly erroneous view of the evidence. *Monroe v. Grider*, 884 S.W.2d 811, 816 (Tex.App.--Dallas 1994, writ denied). As such, an appellate court will view the conflicting evidence in the light most favorable to the trial court's ruling and will draw all reasonable inferences in favor of the trial court's judgment. *Herring v. Welborn*, 27 S.W.3d 132, 143 (Tex.App.--San Antonio 2000, pet. denied).

The Civil Practice and Remedies Code permits a trial court to grant sanctions against an attorney and the attorney's client if the attorney signs a pleading that makes allegations without evidentiary support. TEX.CIV.PRAC.&REM.CODE ANN. §§ 10.001(3), 10.004(a)(Vernon 2002). The sanctions "must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated." TEX.CIV.PRAC.&REM.CODE ANN. § 10.004(b).

In this case, the trial court offered five pages of findings of fact, indicating that Mr. Gomez did not intentionally or knowingly secure Harvey Development's services by deceit, and that Mr. Aguilar filed suit knowing that there was no evidence of this necessary element of theft of services and fraud. The trial court correctly applied the Theft Liability Act, which incorporates the definition of "theft" from the Texas Penal Code. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 134.002(2)(Vernon 2005). A person commits theft of service under Section 31.04 of the Penal Code if, with intent to avoid payment for service he

knows is provided only for compensation, he intentionally and knowingly secures performance of the service by deception, threat, or false token; or he intentionally and knowingly secures the performance of the service by agreeing to provide compensation and, after the service is rendered, fails to make payment after receiving notice demanding payment. TEX.PENAL CODE ANN. § 31.04(a)(1), (4)(Vernon Supp. 2007). The trial court correctly applied this definition in concluding that Harvey Development had no basis in law or fact for filing suit against Mr. Gomez and Mr. Ainsa for theft or fraud. Therefore, we hold that the trial court did not abuse its discretion in awarding sanctions to Mr. Gomez and Mr. Ainsa.

Mr. Aguilar and Harvey Development also argue that the sanctions were excessive and that the trial court failed to consider lesser sanctions. However, the three cases that Harvey Development cites for the proposition that lesser sanctions must be considered deal with discovery sanctions, unlike the instant case. *See Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004); *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003); *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). Mr. Ainsa testified that he and Mr. Gomez were charged approximately $92,000 in attorney's fees for the case, but he stipulated that $10,000 to $11,000 could be deducted from that amount, since Appellees dropped the part of their motion for sanctions that applied to Appellants' claim for breach of fiduciary duty. Because there were no lesser sanctions the trial court could have considered, we hold that the trial court did not abuse its discretion by awarding sanctions in the amount of $80,000.

In their final issue, Mr. Aguilar and Harvey Development argue that the trial court's award of sanctions was not supported by evidence, because there was no proof that the attorney's fees were reasonable and necessary. But proof of the necessity or reasonableness or attorney's

fees is not required when the fees are assessed as sanctions. *Gorman v. Gorman*, 966 S.W.2d 858, 868-69 (Tex.App.--Houston [1st Dist.] 1998, pet. denied). Rather, the amount of attorney's fees awarded as sanctions is within the sound discretion of the trial court. *Id*. at 869. Issues Six and Seven are overruled.

We affirm the trial court's judgment.


July 31, 2008

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.)(Sitting by Assignment)