

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00081-CV

CHRIS L. GILBERT AND GLENN E. JANIK, Appellants

V.

KATE M. MOSELEY, Appellee

On Appeal from the County Court at Law No. 4
Dallas County, Texas
Trial Court No. CC-13-02405-D

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

# OPINION

At their inception, the dealings giving rise to the lawsuit appealed here involved a controversy over improvements to real estate in Dallas County, Texas.[1]  The owners of the real estate, attorney Chris L. Gilbert and his wife, Dawn E. Gilbert,[2] contracted with Moseley Homes, LLC, the owner of which (Steve Moseley) was married to another attorney, Kate M. Moseley.[3]  Although Moseley Homes performed some remodeling to the structure on the real estate, Gilbert was dissatisfied and refused to pay, prompting Moseley Homes to file a mechanic's lien affidavit.  Eventually, a suit was filed by Moseley Homes in the County Court at Law No. 4 of Dallas County to foreclose the mechanic's lien; Gilbert responded by filing a counter-claim against Moseley Homes and Steve Moseley as an individual.

Gilbert also filed a separate lawsuit in a Dallas County district court against Moseley Homes, Steve and Kate (in their individual capacities), and "John Doe Nos. 1–5."[4]  This lawsuit sought very strikingly similar relief to the relief requested in Gilbert's counter-claim against Steve and Moseley Homes.  Gilbert's lawsuit in district court attacked the money claim by Moseley Homes and complained about the lien filed by Moseley Homes, LLC, against the

---

[1]Originally appealed to the Fifth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).  We are unaware of any conflict between precedent of the Fifth Court of Appeals and that of this Court on any relevant issue.  *See* TEX. R. APP. P. 41.3.

[2]Apparently, there was a divorce between Dawn and Chris Gilbert, and the realty was awarded to Chris (from hereafter we will refer to Chris only as "Gilbert," individually).

[3]Kate, it appears, was once associated with Chris in the practice of law.

[4]Gilbert named "John Doe Nos. 1–5" as other defendants, describing them as attorneys and/or law firms whose rights may be affected or who may have a material interest in the property.  They were, in fact, employers of Kate Moseley.

property, seeking to have the property declared not subject to the mechanic's lien claim. This litigation contains a large number of imaginative claims as well as implicit threats to involve the employers of Kate as a John Doe in the action, despite the apparent lack of any indication that any of the employers had any interest in the case or controversy or any legitimate reason for being named as parties to the suit. Glenn E. Janik, Gilbert's attorney, caused a subpoena to be served on the law firm that employed Kate.

The district court case was eventually transferred to the county court at law where the original lawsuit was filed. Kate sought sanctions against both Gilbert and Janik, claiming that the district court case had been filed for the sole purpose of harassing Kate.

The county court at law sanctioned Gilbert and Janik, awarding Kate judgment jointly and severally against them in the sum of $30,150.00, and ordered the dismissal of the lawsuit against Kate. Janik and Gilbert filed a petition for writ of mandamus with the Dallas Court of Appeals to set aside that order; this petition was heard and denied without the order of dismissal containing any discussion of the case on its merits.[5] Upon a severance of the one-time district court case from the case filed in the county court at law, the sanctions order and the order of dismissal became a final judgment, and the matter was appealed.

Gilbert characterizes the dismissal of Kate and the sanction against him as death penalty sanctions and argues they were improper because the trial court did not first attempt to utilize lesser sanctions.

---

[5]*In re Gilbert and Janik*, No. 05-13-00258-CV, 2013 WL 1397150 (Tex. App.—Dallas Apr. 5, 2013, orig. proceeding) (mem. op.).

3

The order of which Gilbert complains does two things: (1) it dismisses Kate from the lawsuit and (2) it sanctions Gilbert and Janik in the amount of $30,150.00. Although the appellants' brief mentions the dismissal of Kate, it provides no specific argument regarding the reason they feel that improper, other than generic statements that the sanctions order is a death penalty and ultimately asking that the sanctions order (which necessarily includes the dismissal) be vacated. In other words, the brief aims its complaints almost solely toward the issue of the order for Gilbert and Janik to pay the sanctions with much less emphasis on the order for dismissal of the claim against Kate. Even so, we consider both the ordered sanction and the order of dismissal.

Gilbert and Janik argue that because the trial court did not experiment with other, lesser, sanctions before ordering their case dismissed, as a matter of law, neither the dismissal nor the associated monetary sanctions can stand. We disagree.

An initial question is whether this qualifies as a death penalty sanctions case. Originally, the term death penalty as applied to sanctions was strictly in the context of discovery abuse. *TransAmerican Nat'l Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991) (orig. proceeding). In that context, the concept encompasses the limitation on the power of courts to dismiss an action without allowing a hearing on its merits. *Id.* Such a sanction cannot be applied just to punish or deter bad behavior, "absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules." *Id.*

The complained-of order does indeed dispose of the entirety of the severed action by dismissing all claims against Kate with prejudice to refiling them. However, the dismissal with

4

prejudice was from the parallel suit which Gilbert had filed in another court and which had been transferred to the county court at law. If Gilbert and his attorney chose to add Kate in the controversy concerning the real estate and its improvements, they could have added Kate to the lawsuit pending in the county court at law. It is plain that the filing of a separate lawsuit which included her as a defendant (particularly with the implicit threat of involving Kate's employers in the controversy) in an entirely different court was done with the intent to manipulate the system and to harass Kate. Arguably, in such a situation even a dismissal might not constitute a death penalty.

However, a death penalty sanction is generically defined as a sanction that ends the prosecution of a lawsuit. The complained-of dismissal itself (although not specifically described by the trial court as a sanction) did operate to terminate this particular suit against this particular person. In the absence of any suggestion of a proper alternative justification for the dismissal, we will treat the dismissal in our analysis as a sanction. That conclusion does not, however, automatically require the importation of every piece of analysis used for death penalty reviews in the context of discovery abuses. We will apply those analyses as they appear to be appropriate in to this situation.

The issue before this Court is whether the trial court abused its discretion, either by dismissing the case or ordering the imposition of cash sanctions against counsel and party. *See Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). In applying that standard, we determine whether the trial court acted without reference to guiding rules and principles and reverse only if

5

the ruling was arbitrary or unreasonable. *Id.* at 838–39. The trial court, in its sanction/dismissal order, made a number of findings which are reproduced below in their entirety:

> Defendant Kate Moseley is DISMISSED WITH PREJUDICE from this lawsuit. The Court finds the claims asserted against Defendant Kate M. Moseley were brought in bad faith by Defendant/Counter-Plaintiff Chris Gilbert and his counsel Glenn Janik. Specifically, the claims asserted by Chris Gilbert and his counsel Glenn Janik were groundless and brought for purposes of harassment in violation of TRCP 13 and CPRC 9 & 10. Chris Gilbert and Glenn Janik are SANCTIONED, jointly and severally, in the amount of $30,150.00.
>
> The Court finds the following after reviewing the evidence and taking judicial notice of the contents of its file:
>
> 1.     The underlying dispute concerns home remodeling services provided by Steve Moseley and Moseley Homes, LLC to Chris and Dawn Gilbert. Because Moseley Homes, LLC was allegedly not paid in full for its work, a lawsuit against the Gilberts was filed and counterclaims were alleged against Moseley Homes, LLC and Steve Moseley, individually (See Ex. 4–7).
>
> 2.     A lien was placed by Moseley Homes, LLC on the Gilberts' home at 4402 Taos Road. Chris Gilbert believes the lien is a fraudulent lien and has pleaded those allegations (See Ex. 4–7, 15).
>
> 3.     Chris Gilbert, through his counsel, demanded the lien be removed on the property at 4402 Taos Road. If the lien was not removed, Gilbert threatened to add more claims against Steve Moseley and Moseley Homes. Gilbert also threatened to sue Kate Moseley, the wife of Steve Moseley and an attorney at Alston & Bird. Gilbert also threatened to send counsel for Moseley Homes, LLC "litigation hold letters" and to evaluate the ethics of Moseley Homes, LLC's counsel, possibly for reporting to the State Bar of Texas (See Ex. 3).
>
> 4.     It is undisputed that Kate Moseley is not a member of Moseley Homes, LLC. It is also undisputed that Kate Moseley did not perform remodeling services at the 4402 Taos Road property. Finally, it is undisputed Kate Moseley never put a lien on the property at 4402 Taos Road.
>
> 5.     After this Court had heard a July 16, 2012 summary judgment motion concerning Chris Gilbert's counterclaim of fraudulent lien by Moseley Homes, LLC, and before the Court ruled in writing, Gilbert went to state district court on July 25, 2012 and filed nearly identical claims for relief (See Exhibit 21, Exhibit

6

5, and the First Amended Motion for Sanctions, containing Original Petition in 44th District Court). Ultimately, this Court denied Gilbert's summary judgment motion on August 7, 2012, and the 44th District Court transferred the DC-12-08228-B case to this Court. DC-12-082228-B was converted into CC-12-06402-D, which was then consolidated into this cause, CC-II-00621-D.

6. Gilbert and his counsel did argue, in a Motion to Transfer to district court, that this Court did not have jurisdiction to hear suits to quiet title to land, which is why they claimed they needed to file the state district court case. The Court disagreed and denied the Motion. The Court does not base its sanctions against Chris Gilbert and Glenn Janik due to their decision to sue Moseley Homes, LLC and Steve Moseley in state district court. It is the claims against Kate Moseley the Court finds objectionable and subject to sanction.

7. In the Original Petition in the 44th District Court, Gilbert and Janik claimed Moseley Homes, LLC was not observing corporate formalities and therefore Kate Moseley was a "necessary party" to the suit to quiet title (See 44th district court Original Petition). Failure to observe corporate formalities would not be a legal basis upon which liability would be created against Kate Moseley. She is not a member of Moseley Homes, LLC. The fact that she may have introduced Chris Gilbert to her husband, Steve Moseley, or that she may have done legal work for Moseley Homes, LLC is irrelevant.

8. After Kate Moseley's counsel, James Pennington, had a conversation on August 23, 2012 with Glenn Janik regarding the claims made against Ms. Moseley, Gilbert amended his petition in state district court (See Exhibit 21-22). Gilbert and Janik, rather than dismissing Kate Moseley, doubled down on their original claims and added a tortious interference of contract claim against her (See Exhibit 21). Gilbert and Janik now claimed Kate Moseley had a "material interest" in the property in dispute and her failure to remove the lien was interfering with Gilbert's ability to sell his home (Exhibit 21). Again, Kate Moseley never filed a lien on the property at issue. She has no duty or individual ability to remove a lien filed by another party. The fact that a spouse may indirectly benefit from the operation of her husband's construction company does not mean she has a "material interest" in the property in dispute. With that logic, why not sue the Moseley children, if any? Kate Moseley did no work on the property at issue. She did not put a lien on the property. She is not a member of the LLC that did put a lien on the property. The claims brought against Kate Moseley have no basis in law or fact.

9. Gilbert and Janik served a subpoena and corporate representative deposition notice to the law firm of Alston & Bird, LLP, Kate Moseley's

employer. This discovery was done for purposes of harassment. The deposition topics are irrelevant to the underlying litigation between the only known "materially interested" or "necessary" parties for the reasons articulated above (see Exhibit 19).

Unlike the discovery cases, in this case it appears that the sanction order was issued based on an application of Chapters 9 and 10 of the Texas Civil Practice and Remedies Code and Rule 13 of the Texas Rules of Civil Procedure. Those authorities allow a court to issue sanctions for specific conduct. The improper conduct specified by Section 10.001 of the Texas Civil Practice and Remedies Code as a basis for sanctions includes the presentation of a pleading or motion for "any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation." TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(1) (West 2002).

By filing a pleading or motion, the signatory to that pleading also certifies, among other things, that

> (2) each claim, defense, or other legal contention . . . is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]

> (3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(2), (3) (West 2002).

A court is permitted to "impose a sanction on the person [who signed the pleading], a party represented by the person, or both." TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(a) (West 2002). "The sanction must be limited to what is sufficient to deter repetition of the

conduct or comparable conduct by others similarly situated." TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(b) (West 2002).

Similarly, a sanction for violating Rule 13 may be assessed against a signatory of a "pleading, motion or other paper" that was "groundless and brought in bad faith or groundless and brought for the purpose of harassment," a party represented by the signatory, or against both. TEX. R. CIV. P. 13.

Section 9 of the Civil Practice and Remedies Code (focused solely on tort cases) authorizes a laundry list of sanctions, specifically including, among other sanctions, dismissal of a cause of action,[6] and it "does not apply to any proceeding to which Section 10.004 or Rule 13 . . . applies." TEX. CIV. PRAC. & REM. CODE ANN. § 9.012(h) (West 2002). Section 10 applies to other actions, with a much shorter list of specified available sanctions, while Rule 13 refers to the discovery sanction section in Rule 215.2(b) for its list of (nonexclusive) sanctions. TEX. R. CIV. P. 215.2(b).

In *Low v. Henry*, 221 S.W.3d 609, 620 (Tex. 2007), the Texas Supreme Court addressed sanctions entered under Chapter 10 and generally concluded that such sanctions should not be excessive; the court further commented that in *Cire*, it had required a trial court to explain that it considered lesser sanctions before imposing severe, death penalty, sanctions.

Following the lead of the Texas Supreme Court in *Cire*, the Dallas Court of Appeals has determined that "the trial court need not test the effectiveness of each available lesser sanction by actually imposing the lesser sanction on the party before issuing the death penalty." *Shops at*

---

[6]It appears that the section was created in 1987 as part of the swarm of legislation created in the opening salvos of tort reform.

*Legacy (Inland) Ltd. P'ship v. Fine Autographs & Memorabilia Retails Stores, Inc.*, 418 S.W.3d 229, 233 (Tex. App.—Dallas 2013, no pet.) (citing *Cire*, 134 S.W.3d at 840). However, the cases go on to explain that the trial court "must analyze the available sanctions and offer a reasoned explanation as to the appropriateness of the sanction imposed." *Id.* (citing *Cire*, 134 S.W.3d at 840).

In the context of sanctions assessed for the filing of frivolous lawsuits, the El Paso Court of Appeals has held that lesser sanctions must be considered in discovery sanctions proceedings, but where attorney fees awarded as sanctions were involved, there were no lesser sanctions that the court could have considered; therefore, a trial court did not abuse its discretion by awarding monetary sanctions. *Sellers v. Gomez*, 281 S.W.3d 108, 115 (Tex. App.—El Paso 2008, pet. denied).

In this case, although Gilbert had explicit opportunity to amend his claims against (or dismiss his claims against) Kate, he declined to do so. In fact, as pointed out by the trial court in its findings, rather than dismissing the claims against Kate, Gilbert instead "doubled down" on his claims, adding a tortious interference with contract claim (a claim for which he has failed to direct us to any legitimate support).

The trial court explained in its order that it was dismissing this case because the claims against Kate were made in bad faith, were groundless, and were brought for purposes of harassment in violation of Rule 13 of the Texas Rules of Civil Procedure as well as Chapters 9 and 10 of the Texas Civil Practice and Remedies Code. The court went on to lay out the behavior of counsel and explained in detail why each of the claims against her were groundless

10

and why those claims constituted harassment. The court further noted (although explicitly without relying upon) the filing of the action in a separate court. The trial court also emphasized that although Gilbert had opportunities to amend the pleadings to add a legitimate cause of action or amend the claims so that they would raise a viable claim, he and his attorney had not corrected the failure but, instead, compounded it by adding additional specious claims.

This is not a discovery scenario where many types of lesser sanctions might be utilized, e.g., striking a particular pleading, disallowing certain discovery, or limiting types of discovery. The sanctionable conduct here is the institution and pursuit of a groundless lawsuit that was brought in bad faith for purposes of harassment.

> "Meritless claims impose a terrible hardship on opponents, and it is unjust to allow such claims to be presented." Although we recognize that the supreme court strongly prefers that trial courts consider the availability of lesser sanctions before imposing death-penalty sanctions, they do not require it where, as here, the offensive conduct is egregious and where it is apparent that no lesser sanctions would promote compliance with the rules. *See Cire*, 134 S.W.3d at 840 (citing *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729–30 (Tex. 1993)).

*JNS Enter., Inc. v. Dixie Demolition, LLC*, 430 S.W.3d 444, 456 (Tex. App.—Austin 2013, no pet.) (citation omitted).

Under these facts, there is no realistic lesser measure that could have been utilized by the trial judge as a lesser sanction in addition to the opportunities already provided. *See Almanza v. Transcon. Ins. Co.*, No. 05-97-01612-CV, 1999 WL 1012959 (Tex. App.—Dallas Nov. 8, 1999, pet. denied) (not designated for publication) (although trial court did not state it had considered availability of lesser sanctions, appeals court found only appropriate sanctions were dismissal of petition and assessment of attorney fees).

11

We conclude that the trial court could properly utilize a death penalty sanction in this case. A remaining question is whether the application of such a sanction is supported by the record. In that vein, appellants raise a number of complaints about the sufficiency of evidence to support the trial court's findings. A critical additional consideration in this case is the fact that the appellants requested (without reference to Rule 34.6 of the Texas Rules of Appellate Procedure) that the court reporter not include the exhibits from the sanctions hearing in the appellate record. We, therefore, apply the presumption that the omitted portions of the record are relevant and support the judgment on appeal. *See Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex. 2002) (per curiam); *Christiansen v. Prezelski*, 782 S.W.2d 842 (Tex. 1990). Accordingly, we presume that the omitted portions of the record are relevant to determining whether the evidence provided was insufficient to support the trial court's decision to dismiss the case against Kate or to issue sanctions against Gilbert and Janik. *See El Paso Accent Homes, L.L.C. v. Preferred Grp. Props., Inc.*, 387 S.W.3d 810, 812 (Tex. App.—El Paso 2012, no pet.) (requesting record be prepared without including exhibits).

In this case, there was evidence about attorney fees at a level which would readily support the amount of the sanctions award. *See Stromberger v. Turley Law Firm*, 251 S.W.3d 225, 226 (Tex. App.—Dallas 2008, no pet.). Even if there was no such evidence, we would be required to assume that the omitted portions of the record supported the award.[7]

---

[7]We also note authority indicating that proof of the necessity or reasonableness of attorney fees is not required in a situation where the fees are assessed as sanctions. *Gorman v. Gorman*, 966 S.W.2d 858, 868–69 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). "Rather, the amount of attorney's fees awarded as sanctions is within the sound discretion of the trial court." *Sellers v. Gomez*, 281 S.W.3d 108, 116 (Tex. App.—El Paso 2008, pet. denied).

Under these facts and in this posture, we conclude that the absence of explicit language in the order stating that the court had considered using lesser measures and found them wanting is not controlling; therefore, the absence of this language does not render the dismissal improper. We further conclude that the evidence is sufficient to support the monetary sanction. In the absence of a complete record, we are unable to find that the trial court abused its discretion in its ruling on either of these matters. On this record, we therefore conclude that Gilbert and Janik's conduct is one of the exceptional cases in which lesser sanctions either do not exist or are not such as would promote the requisite compliance with the rules. *See generally Citibank, N.A. v. Estes*, 385 S.W.3d 671, 677 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

We affirm.


Bailey C. Moseley
Justice


Date Submitted:    October 29, 2014
Date Decided:     December 17, 2014