**Affirmed as Modified; Opinion Filed September 21, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01653-CV

**THOMAS ALLEN POWELL D/B/A ARCHITECTURE UNLIMITED AND J. KEITH WEBB, Appellants**
**V.**
**PENHOLLOW, INC., JOHN O. PENHOLLOW, AND YVONNE L. PENHOLLOW, Appellees**

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-03464-2011**

## OPINION ON SECOND MOTION FOR REHEARING

Before Justices Bridges, Lang, and Schenck
Opinion by Justice Lang

On June 1, 2015, this Court issued an opinion modifying the trial court's judgment and affirming the judgment as modified. Appellants Thomas Allen Powell d/b/a Architecture Unlimited ("Powell" or "plaintiff") and J. Keith Webb filed a timely motion for rehearing on June 29, 2015. We denied that motion for rehearing, withdrew our June 1, 2015 opinion and judgment, and issued a July 28, 2015 opinion on motion for rehearing. Appellants filed a timely "Second Motion for Rehearing" on August 12, 2015. We deny appellants' second motion for rehearing. In addition, we withdraw our July 28, 2015 opinion and vacate the judgment of that date. This is now the opinion of the Court.

Powell filed this lawsuit against appellees Penhollow, Inc.; John O. Penhollow ("J.P."); and Yvonne L. Penhollow ("Y.P.") (collectively, "appellees" or "defendants") seeking to collect on a judgment obtained by Powell in a federal case. Following a bench trial, the trial court rendered a take-nothing judgment against Powell and awarded attorney's fees to appellees in the amount of $26,504 as sanctions against Powell and his counsel, J. Keith Webb (collectively, appellants) for violations of chapter 10 of the Texas Civil Practice and Remedies Code, *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 10.001–.006 (West 2002) ("Chapter 10"), plus additional amounts in the event of appeal.

On appeal, appellants assert seventeen issues pertaining to the trial court's sanctions against them. We decide in favor of appellants on their fourteenth issue and modify the trial court's judgment accordingly. Appellants' remaining issues are decided against them. The trial court's judgment is affirmed as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties do not dispute that (1) in August 2004, Powell filed a copyright infringement claim against Penhollow Custom Homes, LLC ("PCH") and Steven Penhollow ("S.P.") in the United States District Court for the Northern District of Texas; (2) in May 2009, Powell obtained a judgment in that federal lawsuit in the amount of $110,907 against PHC and S.P., jointly and severally ("the federal judgment"); (3) at all times relevant to this appeal, S.P. owned 90% of PCH and the remaining 10% was owned by Penhollow, Inc.; and (4) Penhollow, Inc. is owned by S.P.'s parents, J.P. and Y.P.

In early 2011, Powell attempted to collect on the federal judgment by filing several actions in Texas state court against PCH and S.P. In those cases, Powell sought discovery respecting business records of both PCH and Penhollow, Inc. Subsequently, Powell (1) filed this

lawsuit against Penhollow, Inc. on August 22, 2011, and (2) filed a February 10, 2012 first amended original petition in which he added J.P. and Y.P. as defendants in this lawsuit.

According to Powell's first amended original petition in this case, he was unable to collect the federal judgment "because [S.P.] claims to have no assets and [PCH] has apparently been improperly stripped of assets and/or was undercapitalized." Powell asserted in part that J.P. and Y.P. "are jointly and severally liable for the wrongful conduct of [PCH] and for payment of the [federal judgment] because Penhollow, Inc. is the alter ego of [PCH] and [J.P.] and [Y.P.] are, in turn, the alter egos of Penhollow, Inc."[1] Additionally, Powell asserted "[PCH] and Penhollow, Inc. were operated as a sham to perpetrate a fraud on the plaintiff."

Defendants filed a combined general denial answer and counterclaim on May 2, 2012. They contended in part "Powell has been in litigation in four courts for eight years seeking to

---

[1] Specifically, Powell contended in his first amended original petition that each of the following allegations "has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery":

a. Penhollow, Inc. is and has at all relevant times herein been a member in [PCH].

b. [J.P.] and [Y.P.] are the sole shareholders, officers, and directors of Penhollow, Inc.

c. The controlling member and manager of [PCH] is [S.P.], who is the son of [J.P.].

d. All or a significant portion of the operating capital of [PCH] was provided by Penhollow, Inc. and/or [J.P.].

e. [PCH] was undercapitalized to an extent that left potential claimants, such as the plaintiff herein, without an effective remedy to address wrongdoing of the company, which would result in a manifest injustice.

f. [PCH] and Penhollow, Inc. did not keep separate books and accounts.

g. [PCH] and Penhollow, Inc. did not keep their assets separate.

h. [J.P.] was permitted to and did participate in determining policies, procedures, and actions of [PCH].

i. [J.P.] guaranteed loans to [PCH] provided by others.

j. Penhollow, Inc. provided loan funding to [PCH].

k. [PCH's] business address is also the current residence of [S.P.], where he lives rent-free. The residence is owned by [J.P.] and his wife, [Y.P.].

l. Assets of [PCH] were stripped from that entity when it ceased operations and were distributed to the members, including Penhollow, Inc.

m. Assets of Penhollow, Inc. were stripped from that entity and distributed to its shareholders, {J.P.] and [Y.P.].

n. [PCH] operated as a mere tool or business conduit of Penhollow, Inc.

o. Penhollow, Inc. operated as a mere tool or business conduit of [J.P.] and [Y.P.].

obtain and collect a judgment against PCH and [S.P.]" and "[n]umerous depositions and thousands of pages of documents have been produced, which prove: 1) PCH has no money or assets; 2) PCH is no longer in business; 3) [S.P.] has no money or assets; 4) all loans from [Penhollow, Inc.] to PCH were arm's length transactions; [and] 5) [Penhollow, Inc.] did not receive and PCH did not make any preferential transfers." Additionally, defendants asserted in their counterclaim as follows:

> Prior to filing this lawsuit, Powell was aware of the facts set forth above and therefore knew or should have known [defendants] have not participated in fraud and are not the alter ego of PCH. . . . As a result of Plaintiff's actions, Defendants have been damaged in their reputation in the community and in the fact Defendants have and will incur attorney's fees and litigation costs solely as a result of Plaintiff's frivolous lawsuit.
> . . . .
> WHEREFORE, for the foregoing reasons, Defendants pray this Court deny Plaintiffs' Amended Original Petition in all things, and for such other and further relief, at law and in equity, including but not limited to attorney's fees and costs required to respond to the Amended Original Petition and to further defend themselves and prosecute the Counterclaim, to which they may be justly entitled.

Discovery in this case proceeded in part as follows: (1) in November 2012, pursuant to a discovery request by Powell, Penhollow, Inc. produced more than 2,500 pages of records and documents pertaining to its operations; (2) on December 19, 2012, Powell testified in part in a deposition that he does not recall any indication that J.P., Y.P., or Penhollow, Inc. controlled PCH and, based on his observations, it appeared to him that S.P. "controlled and managed" PCH; and (3) on April 19, 2013, and May 23, 2013, respectively, Powell responded to defendants' request for designation of experts by serving defendants with two amended responses designating Harry D. Perkins, a certified public accountant, as an expert and describing the opinions to which Perkins was "expected to" testify (the "expert designation").

Powell filed second, third, and fourth amended petitions on January 21, 2013; July 22, 2013; and August 7, 2013, respectively. Each of those amended petitions contained assertions identical to those described above, with the exception of item "c" in Powell's list of allegations

–4–

that he contended had evidentiary support or were "likely to have evidentiary support after a reasonable opportunity for further investigation and discovery." Specifically, in his third and fourth amended original petitions, item "c" stated as follows: "The manager of [PCH] is [S.P.], who is the son of [J.P.] and [Y.P.]. [S.P.] is also a member in [PCH]."[2]

On August 8, 2013, Powell filed a "Motion for Spoliation Sanctions." Powell contended evidence relevant and material to proving his claims was destroyed by S.P. and PCH "under circumstances that amount to spoliation" and "such spoliation provides a basis to pierce the 'corporate veil' of [PCH] so as to support a judgment against Defendants."

Also, Powell filed an August 14, 2013 motion to consolidate this case with a state court action filed by him against S.P. and PCH to collect on the federal judgment. Powell stated in part (1) "[t]his case presents issues of spoliation for which it may be necessary for this Court to have [S.P.] and [PCH] before it in order to fashion a proper remedy to those parties' negligent or intention [sic] destruction of evidence" and (2) he "could not join [S.P.] and [PCH] directly as defendants herein because there is no cause of action for spoliation in Texas and there is otherwise no basis for a cause of action because Plaintiff has already obtained a judgment against those parties."

A two-day trial commenced August 19, 2013. At the start of trial, the trial court stated it would first conduct hearings on Powell's motions for spoliation sanctions and consolidation. The evidence presented by the parties pertaining to those motions included (1) reporter's records of hearings and discovery requests and responses from this case and the related cases filed by Powell described above; (2) a copy of the transcript of Powell's December 19, 2012 deposition; and (3) live testimony of S.P. and J.P. Defendants objected to the admissibility of certain discovery requests and responses from the related cases described above on the grounds that such

---

[2] Powell's August 7, 2013 fourth amended original petition is the last-filed petition in this case.

items were (1) hearsay and (2) not relevant because they constituted "discovery in another proceeding that pertains to somebody else." The trial court sustained defendants' objections as to "any discovery that is not between the plaintiff and the defendants in this case" and excluded Plaintiff's Exhibits 4, 5, 8, 9, 10, 12, 14, and 16 (the "excluded evidence"). Later during trial, Powell's counsel made an offer of proof respecting those exhibits, which consisted of 2010 and 2011 discovery requests to, and responses from, PCH in the related cases filed prior to this case. Those exhibits showed PCH did not produce the business records requested by Powell.

Additionally, Powell called Perkins as an expert. Defendants (1) objected that Perkins's testimony was not "relevant or admissible" and (2) asked permission to conduct a voir dire examination. During voir dire, Perkins testified in part (1) on April 19, 2013, he had not yet been contacted by Powell and "didn't even know this case existed"; (2) he did not provide the opinions in the May 23, 2013 response to defendants' request to designate experts; and (3) he had not reviewed all of the documents described as the bases for the opinions in the expert designation. The trial court sustained defendants' objection to Perkins's testimony.

Following the presentation of evidence pertaining to Powell's motions, Ray Murphy, counsel for defendants, testified respecting his attorney's fees. Murphy (1) stated he is a director of the law firm of Abernathy, Roeder, Boyd & Joplin and was retained by defendants in this matter; (2) testified he had "considered the factors enumerated by the Texas Supreme Court in determining the reasonableness of fees"; and (3) described the specific tasks that "the usual reasonable fee for handling this type of case by similar firms in Collin County would include." Further, Murphy testified (1) his hourly rate is $300; (2) the attorney's fees "incurred in this matter in relation to the defense of the defendants" totaled $56,504; and (3) he "would anticipate" that "the expenses and attorney's fees for appealing this matter to the defendants will be approximately $30,000," the preparation of a response to a petition in the Texas Supreme

Court "would be approximately $20,000," and, if the supreme court deemed a hearing necessary, "the reasonable and necessary fees for that hearing would be approximately $5,000."

After the parties' closing arguments, Murphy stated to the trial court, "This has essentially been the trial then?" The trial court answered, "Yes." Then, Murphy stated as follows:

> I am, in fact, asking for sanctions under Texas Rule of Civil Procedure 13 based on the petition clearly not being accurate. And I would point out, Judge—and I guess to the extent that I need to put on testimony, I would call myself to that extent to say that on November 21st, 2012, we delivered the 2,675 pages of records that have been talked about throughout this matter. That was the date of delivery.
> So for any petition that came after November 21st, 2012, clearly those petitions were not—were based on facts that were known to be inaccurate. And, frankly, before that, there was no good-faith basis to allege those facts, particularly the fact of shared accounts. Never been true. Shared accountant, never been true. Commingled bank accounts, it never was true. And they had no basis to assert that claim and yet it required my client to go through the process of defending it in, I think, at least three depositions, possibly more, in this matter, as well as going through thousands of pages of records now and everything else.
> So for that reason, Judge, we are asking for attorney's fees to be awarded to my client.

Powell's counsel, J. Keith Webb, responded that he "wasn't quite prepared for this" and requested that he be allowed to "submit a written brief on this issue" and "forgo any further oral statement." The trial court granted Webb's request and stated that the parties' briefs respecting sanctions were due in ten days.

Defendants filed a "Trial Brief on Sanctions Requests for Frivolous Claims" on August 30, 2013, and served Webb with a copy by mail on that same date. Defendants contended "sanctions should be awarded against the Plaintiff . . . and/or Plaintiff's counsel, pursuant to [Chapter 10]" because (1) "the Plaintiff's Petition contained allegations which did not have, nor were likely to have, evidentiary support after a reasonable inquiry" and (2) "the Plaintiff's Motion to Consolidate and Motion for Spoliation Sanctions have no basis in law or fact and are not warranted by good faith arguments for the extension, modification or reversal of existing

law." Specifically, defendants argued in part (1) Powell asserted "baseless claims" against J.P. and Y.P. "throughout the proceedings" in all four of his amended petitions; (2) Powell's deposition testimony and documents produced by Penhollow, Inc. showed Powell's allegations were untrue, were not investigated by Powell, and/or were "contrary to Powell's experience"; (3) there was "no basis in the law" as to Powell's motion to consolidate because the two cases in question have "no common question of law or fact"; (4) "[n]one of the cases cited by [Powell] support the proposition that a party that does not spoliate evidence can be sanctioned for the acts of a party which does"; and (5) "there is no non-frivolous argument to extend, modify, or reverse existing law regarding sanctioning one party for the alleged spoliation of documents by another." Defendants asserted they incurred $56,504 in "reasonable and necessary attorney fees and expenses" in "defending the frivolous claims of [Powell]" and asked the trial court to award them sanctions in that amount.

On approximately that same date, Powell filed a "Brief in Opposition to Defendants' Counterclaim for Sanctions."[3] Powell asserted in part (1) "the Defendants herein attempt to convince this Court that [Powell] or his attorney should pay all of the Defendants' attorney's fees and expenses" and (2) defendants' "counterclaim" is "short on detail as to the authority therefor," and, consequently, his brief "will address each of the potential grounds—Texas Rule of Civil Procedure 13 and Civil Practice & Remedies Code chapters 9 and 10." Specifically, Powell contended in part defendants were not entitled to sanctions pursuant to Chapter 10 because (1) defendants did not satisfy their burden to overcome the presumption that Powell's pleadings were filed in good faith; (2) "[S.P.'s] destruction of evidence precluded 'a reasonable opportunity for further investigation and discovery'"; (3) Powell's argument that he should be

---

[3] The record shows Powell's "Brief in Opposition to Defendants' Counterclaim for Sanctions" was filed by the trial court on September 3, 2013. However, that brief contains a "Certificate of Service" that states a copy was "forwarded" to defendants on August 30, 2013. Appellants state in their first motion for rehearing in this Court that Powell "timely filed [that] brief by mail as allowed by Texas Rule of Civil Procedure 5."

entitled to recover on the federal judgment from Penhollow, Inc. because Penhollow, Inc. had a right to inspect and copy the books and records of accounts of PCH, but took no action to enforce that right or preserve those books and records of accounts, is not groundless or frivolous; and (4) section 10.002 of Chapter 10 "authorizes only an award of reasonable expenses and attorney's fees for presenting the motion unless no due diligence is shown" and "[Powell's] conduct could hardly be described as lacking diligence."

The trial court's judgment described above is dated September 3, 2013. The trial court stated in part in the judgment that it "incorporates herein the Findings of Fact and Conclusions of Law executed contemporaneously with this Judgment." Further, the trial court stated it finds that (1) "good cause exists for the imposition of Sanctions on the Plaintiff and his counsel based on Chapter 10 of the Civil Practices and Remedies Code as set forth more specifically in the Findings of Fact and Conclusions of Law, including Plaintiff asserting frivolous factual claims in his Petition and filing a Motion to Consolidate and a Motion for Spoliation Sanctions which were not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law"; (2) "although the Plaintiff reviewed the Petition and approved the factual allegations contained therein, the Plaintiff did not take appropriate steps to investigate these claims and that they were not supported by evidence or likely to have evidentiary support after a reasonable inquiry"; and (3) "the most appropriate sanction is that the Plaintiff and his counsel be required to pay the attorney fees incurred by the Defendants in defending the baseless claims asserted by the Plaintiff."[4]

---

[4] The judgment stated that the "baseless claims" asserted by Plaintiff included (1) Penhollow Inc. did not keep separate books and accounts from PCH; (2) Penhollow Inc. did not keep assets separate from PCH; (3) J.P. was permitted to and did participate in determining policies, procedures and actions of PCH; (4) J.P.'s guaranteed loans to PCH provided by others; (5) assets of PCH were stripped from that entity when it ceased operations and were distributed to the members, including Penhollow, Inc.; (6) assets of Penhollow, Inc. were stripped from that entity and distributed to its shareholders, J.P. and Y.P.; (7) PCH operated as a mere tool or business conduit of Penhollow, Inc.; (8) Penhollow, Inc. operated as a mere tool or business conduit of J.P. and Y.P.; and (9) PCH and Penhollow, Inc. were operated as a sham to perpetrate a fraud on the plaintiff.

Additionally, the judgment provided (1) Powell and Webb are jointly and severally liable to defendants for attorney's fees in the amount of $26,504 and (2) "in the event the Plaintiff appeals this judgment, the Defendants shall have and recover from the Plaintiff an additional $20,000 for attorney's fees in the event of appeal of this matter to the appropriate appellant [sic] court, $10,000 in the event of Petition for Review filed with the Texas Supreme Court, and an additional $5,000 in the event the Petition is granted and there is an appeal to the Texas Supreme Court." Each of the dollar amounts described above was handwritten and initialed by the trial judge and interlineated above a typed, greater number that was crossed out.[5]

The trial court signed (1) findings of fact and conclusions of law dated September 3, 2013, and (2) pursuant to a request by Powell, "additional/amended findings of fact" dated September 20, 2013. In total, the trial court made 110 findings of fact and 69 conclusions of law.[6]

---

[5] Specifically, the number 26,504 in the judgment was handwritten above the typed number 56,504, which was crossed out; the number 20,000 was handwritten above the typed number 30,000, which was crossed out; the number 10,000 was handwritten above the typed number 20,000, which was crossed out; and the number 5,000 was handwritten above the typed number 10,000, which was crossed out.

[6] The trial court's findings of fact and conclusions of law stated in relevant part as follows:

**FINDINGS OF FACT**

. . . .

8. Steven Penhollow is the controlling and managing member of PCH.

. . . .

29. Powell admitted through his counsel at a Motion for Summary Judgment hearing that Powell knew there was no evidence of fraud by Penhollow, Inc., John Penhollow, and Yvonne Penhollow.

30. Nonetheless, Plaintiff continued to assert that Penhollow, Inc., John Penhollow, and Yvonne Penhollow committed fraud as to Plaintiff in the operation of PCH.

31. Powell also claims in his Petition that PCH and Pen, Inc. were operated as a sham to perpetrate a fraud on Powell.

32. Powell believes he reviewed the Petition and approved it before it was filed.

. . . .

34. On two occasions after receiving records of Penhollow, Inc., Plaintiff submitted Amended Petitions asserting that Penhollow, Inc. shared accounts and assets with PCH.

. . . .

41. Powell does not recall any indication that John Penhollow, Yvonne Penhollow or Penhollow, Inc. controlled PCH. See [December 19, 2012 deposition of Powell].

42. Based on his observations, it appeared to Powell that Steven Penhollow actually controlled and managed PCH. See [December 19, 2012 deposition of Powell].

43. There is no evidence that John Penhollow controlled PCH.

44. There is no evidence that Yvonne Penhollow controlled PCH.

45. Pen, Inc. kept separate books from PCH.

46. Pen, Inc. did keep its assets separate from PCH.

47. Pen, Inc. and PCH did not have centralized accounting.

. . . .

52. There is no evidence that Pen, Inc. used PCH funds for its own benefit.

53. There is no evidence that John or Yvonne used PCH funds for their, individually or collectively, own benefit.

54. Pen, Inc., John Penhollow, and/or Yvonne Penhollow did not determine policies of PCH.

. . . .

79. There is no evidence of direct fraud against Thomas Powell by Pen, Inc., John Penhollow and/or Yvonne Penhollow.

. . . .

81. There is no evidence that the Defendants made any representation to Powell.

. . . .

88. There is no evidence of any acts by John, Yvonne or Pen, Inc. leading Powell to believe he was dealing with John, Yvonne, or Pen, Inc., rather than PCH.

. . . .

94. John Penhollow, Yvonne Penhollow, and Penhollow, Inc. did not control or have possession of PCH documents.

. . . .

105. During this litigation, John Penhollow, Yvonne Penhollow, and Penhollow, Inc. retained Ray Murphy and Abernathy, Roeder, Boyd & Joplin, PC.

106. The services rendered by Ray Murphy and Abernathy, Roeder, Boyd & Joplin, PC in defending John Penhollow, Yvonne Penhollow and Penhollow, Inc. were reasonable and necessary for these types of services rendered in Collin County, Texas.

107. The fees charged by Abernathy, Roeder, Boyd & Joplin, PC in defending John Penhollow, Yvonne Penhollow and Penhollow, Inc. were $56,504.00.

108. The Court further finds that in the event of an appeal to the Court of Appeals, if the appeal is unsuccessful as to Plaintiff or Plaintiff's counsel, the Defendants will be further entitled to recover from Plaintiff and/or Plaintiff's counsel Thirty Thousand Dollars and No Cents ($30,000.00) as a reasonable attorney's fee regardless of the identity of the appellant/petitioner; in the event of making or responding to a petition for review to the Supreme Court of Texas, the Defendants will be entitled to recover from Plaintiff or Plaintiff's counsel an additional Twenty Thousand Dollars and No Cents ($20,000.00) as a reasonable attorney's fee if the petition is unsuccessful as to Plaintiff or Plaintiff's counsel regardless of the identity of the appellant/petitioner; and in the event a petition for review is granted by the Supreme Court of Texas and the appeal as to Plaintiff or Plaintiff's counsel is unsuccessful, the Defendants will be entitled to an additional Ten Thousand Dollars and No Cents ($10,000.00) as a reasonable attorney's fee regardless of the identity of the appellant/petitioner.

109. All Findings of Fact shall also be deemed to be Conclusions of Law. To the extent any Finding of Fact is a Conclusion of Law or is a mixed question of law and fact, the same is concluded as a matter of law.

110. Plaintiff failed to exercise due diligence into the evidentiary support for his pleadings prior to filing them.

## CONCLUSIONS OF LAW

. . . .

60. There is no good faith basis for an extension of the law to hold a party which does not have a duty to create, preserve, or maintain records, liable for the alleged wrongful acts of a party or parties which do have such an obligation.

61. In an attempt to create a "good faith basis for extension of the law," the Plaintiff contends that courts in New York and Massachusetts, held entities or persons liable for alter ego based on their destruction of documents.

62. In the four cases cited by Plaintiff the entities or persons held liable either destroyed their own records . . . or individually destroyed the records . . . of the Judgment debtor. These cases do not propose that a third party owner of a minority interest in an entity, which entity purportedly spoliates evidence without their knowledge or involvement, should be sanctioned for the alleged wrongdoing of the entity.

63. The Petitions filed by Plaintiff and signed by his counsel, reflecting that the Defendants operated PCH as a sham to perpetrate a fraud on the Plaintiff and that the Defendants were liable for alter ego on the basis that PCH and Pen, Inc. did not keep separate books and accounts, that PCH and Pen, Inc. did not keep their assets separate, that John Penhollow determined policies, procedures and actions of PCH, that John Penhollow guaranteed loans of PCH, that PCH was stripped of assets which were distributed to Penhollow, Inc., and that Pen, Inc. operated PCH as a mere business tool or business conduit, were groundless and brought in bad faith or groundless and brought for the purpose of harassment.

64. Good cause exists for sanctions against counsel for Plaintiff on the basis that the Petitions, Motion to Consolidate and Motion for Spoliation Sanctions were not asserted after an effort to conduct a good faith investigation into the involvement, if any, of the Defendants in PCH's business and when the Plaintiff and his counsel knew that the Defendants were not operating PCH, as evidenced by Plaintiff's own testimony to the contrary and when Plaintiff admitted that it had no basis to assert fraud against the Defendants in Defendant's Motion for Summary Judgment hearing. Further, good cause exists as

On October 3, 2013, Powell filed a "Motion to Vacate Sanctions Order and Modify Judgment." Powell argued the judgment is "incorrect" because (1) sanctions were improperly awarded against a represented party for violation of section 10.001(2) of Chapter 10; (2) Powell's pleadings "include a statement that each allegation had evidentiary support or was likely to have evidentiary support after a reasonable opportunity for investigation and discovery" and "[t]here is no evidence that this statement was untrue at the time the pleadings were signed and filed"; (3) there was no motion to support the imposition of sanctions respecting any pleading or motion filed by Powell after defendants' May 2, 2012 counterclaim and "[c]onsequently, Plaintiff was not afforded notice of the allegations and a reasonable opportunity to respond to the allegations"; (4) "there was no showing of a lack of due diligence"; (5) there is no evidence to support the trial court's finding that Plaintiff's counsel admitted there was no evidence of fraud by defendants; (6) the "sanctions order" does not "describe the conduct the [trial court] determined violated Section 10.001 with sufficient particularity and explain the basis for the sanction imposed"; (7) the trial court's conclusions of law "cite" Powell's expert designation, which pertains to discovery and is not a proper basis for sanctions under Chapter 10;

---

evidenced by the Plaintiff's decision to "identify" experts it had not retained and to claim that Plaintiffs had a basis to "anticipate" their opinions and disclosed that the expert had reviewed documents the expert had never seen.

65. By asserting factual claims in pleadings that the Plaintiff and his counsel knew were without evidentiary support or were not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Plaintiff and his counsel violated Tex. Civ. Prac. & Rem. Code Ch. 10.

66. By asserting legal contentions in its Motion for Consolidation not warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law the Plaintiff and his counsel violated Tex. Civ. Prac. & Rem. Code Ch. 10.

67. By asserting legal contentions in its Motion for Sanctions not warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law the Plaintiff and his counsel violated Tex. Civ. Prac. & Rem. Code Ch. 10.

68. Based on the violations of Tex. Civ. Prac. & Rem. Code Ch. 10, the Court finds that the Plaintiff and his counsel are jointly and severally liable to the Defendants for attorney fees incurred in this matter in the amount of $56,504.00 plus costs of appeal if applicable.

69. All Conclusions of Law shall also be deemed to be Findings of Fact. To the extent any Conclusion of Law is a Finding of Fact or is a mixed question of law and fact, the same is found as a fact.

(citations to record omitted) (emphasis original).

(8) Powell "made at least a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law with respect to application of the spoliation doctrine to Penhollow, Inc. for the intentional destruction of evidence by [S.P.] . . . that is, Penhollow Inc. had a duty to preserve evidence within its possession or control and the financial records of [PCH] were within Penhollow, Inc.'s control"; and (9) the trial court improperly excluded evidence of Powell's efforts to obtain business records from PCH.

After a hearing, Powell's "Motion to Vacate Sanctions Order and Modify Judgment" was denied by the trial court. This appeal timely followed.

## II. APPELLANTS' ISSUES

### A. Standard of Review

We review the imposition of sanctions pursuant to Chapter 10 under an abuse of discretion standard. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014); *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). "An appellate court may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable." *Low*, 221 S.W.3d at 614. "[W]e will not hold that a trial court abused its discretion in levying sanctions if some evidence supports its decision." *Nath*, 446 S.W.3d at 361.

In reviewing the legal sufficiency of the evidence to support a trial court's finding of fact, we view the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable fact finder could and disregarding contrary evidence unless a reasonable fact finder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). If more than a scintilla of probative evidence supports the finding, the legal sufficiency challenge fails. *See Sheehan v. Adams*, 320 S.W.3d 890, 895 (Tex. App.—Dallas 2010, no pet.).

–13–

### B. Applicable Law

Chapter 10 is titled "Sanctions for Frivolous Pleadings and Motions." *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 10.001–.006. Section 10.001 of that chapter provides in part that the signing of a pleading or motion constitutes a certificate by the signatory that, to the signatory's best knowledge, information, and belief, formed after reasonable inquiry,

> (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]
>
> (3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

*Id.* § 10.001; *see also Low*, 221 S.W.3d at 615 ("Each claim against each defendant must satisfy Chapter 10."). A court that determines a person has signed a pleading or motion in violation of section 10.001 may impose a sanction on the person, a party represented by the person, or both. TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(a). The sanction "must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated." *Id.* § 10.004(b). The sanction may include any of the following (1) "a directive to the violator to perform, or refrain from performing, an act"; (2) "an order to pay a penalty into court"; and (3) "an order to pay to the other party the amount of the reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees." *Id.* § 10.004(c). However, a court may not award monetary sanctions against a represented party for a violation of section 10.001(2). *Id.* § 10.004(d). Further, in an order imposing sanctions under Chapter 10, the court shall describe the conduct the court has determined violated section 10.001 and explain the basis for the sanction imposed. *Id.* § 10.005.

Section 10.002, titled "Motion for Sanctions," provides "[a] party may make a motion for sanctions, describing the specific conduct violating section 10.001" or the court may enter an order on its own initiative directing an alleged violator to "show cause" why its conduct has not violated section 10.001. *Id*. § 10.002(a)–(b). The court shall provide a party who is the subject of a motion for sanctions under section 10.002 notice of the allegations and a reasonable opportunity to respond to the allegations. *Id*. § 10.003. A party prevailing on a motion under section 10.002 may be awarded "the reasonable expenses and attorney's fees incurred in presenting or opposing the motion" and "if no due diligence is shown the court may award to the prevailing party all costs for inconvenience, harassment, and out-of-pocket expenses incurred or caused by the subject litigation." *Id*. § 10.002(c).

Generally, courts presume pleadings and other papers are filed in good faith. *Nath*, 446 S.W.3d at 361. The party seeking sanctions bears the burden of overcoming this presumption of good faith. *Id*.

### C. Application of Law to Facts

#### 1. Expert Designation as Basis for Sanctions (Issue 8)

We begin with appellants' eighth issue, in which they contend "[t]he trial court erred in assessing sanctions based on Plaintiff's expert designation." According to appellants, in conclusion of law number 64, the trial court "cites as one basis for its sanctions order" that "good cause exists as evidenced by the Plaintiff's decision to 'identify' experts [sic] it had not retained and to claim that Plaintiffs [sic] had a basis to 'anticipate' their [sic] opinions and disclosed that the expert had reviewed documents the expert had never seen." Appellants assert "such conclusions, even if true, would not provide a proper basis for sanctions under Chapter 10, which applies by its terms to pleadings and motions only."

–15–

Appellees respond in part (1) among the factors a trial court "should consider" in evaluating sanctions is "the degree of willfulness, vindictiveness, negligence, or frivolousness involved in the offense" and (2) "[t]he creation of fictional opinions for experts . . . go[es] to these factors and should be considered by the [trial court]."

In their reply brief in this Court, appellants argue conclusion of law number 64 does not state that the trial court "merely considered" Powell's expert designation, but rather "directly state[s] that the Expert Designation provided good cause for sanctions."

The record shows that in conclusion of law number 64, the trial court stated in part "[g]ood cause exists for sanctions against counsel for Plaintiff <u>on the basis that</u> the Petitions, Motion to Consolidate and Motion for Spoliation Sanctions were not asserted after an effort to conduct a good faith investigation into the involvement, if any, of the Defendants in PCH's business and when the Plaintiff and his counsel knew that the Defendants were not operating PCH." (emphasis added). Then, the trial court stated "as evidenced by" and described, among other things, the expert designation. On this record, we cannot agree with appellants that the trial court "based" its sanctions on Powell's expert designation. *See Skepnek v. Mynatt*, 8 S.W.3d 377, 381 (Tex. App.—El Paso 1999, pet. denied) (noting that appellant's argument that trial court based sanctions on "false affidavit" that was neither pleading or motion "ignores the overriding theme of the trial court's findings of fact and conclusions of law," which included references to more than the affidavit alone).

We decide against appellants on their eighth issue.

2. Legal Argument in Powell's Motion for Spoliation Sanctions (Issue 9)

Next, we address appellants' ninth issue, in which they assert "[t]he trial court erred in assessing sanctions under [Chapter 10] related to Plaintiff's Motion for Spoliation Sanctions." Specifically, appellants argue Powell "made at least a nonfrivolous argument for the extension,

modification, or reversal of existing law or establishment of new law . . . that is, Penhollow, Inc. had a duty to preserve evidence within its possession or control and the financial records of [PCH] were within Penhollow Inc.'s control pursuant to Texas Rule of Civil Procedure 192.7(b)."

In their argument pertaining to this issue, appellants cite section 10.001(2) and the first page of Powell's September 3, 2013 brief in opposition to defendant's request for sanctions. Appellants cite no authority for their position and provide no further analysis, nor do they describe Texas Rule of Civil Procedure 192.7(b) or explain or address how it pertains to this case. We conclude appellants' ninth issue presents nothing for this Court's review. *See* TEX. R. APP. P. 38.1(i) (appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to the authorities and to the record").

We decide appellants' ninth issue against them.

### 3. Evidentiary Support for Pleadings (Issue 4)

In their fourth issue, appellants contend "[t]he trial court erred in concluding that Powell's pleadings were frivolous because the order overlooks the fact that Plaintiff's pleadings include a statement that each allegation had evidentiary support or was likely to have evidentiary support after a reasonable opportunity for further investigation and discovery pursuant to [section 10.001(3)]." Appellants' entire argument in the portion of their appellate brief pertaining to this issue is as follows: "There is no evidence that this statement was untrue at the time the pleadings were signed and filed—the relevant point in time under [Chapter 10]. Sanctions for frivolous or groundless pleadings do not apply to the pursuit of an action later determined to be groundless after pleadings were filed." (case citations omitted).

An appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to the authorities and to the record." TEX. R. APP. P. 38.1(i). "If

–17–

the appellant does not do so, he waives the issue on appeal." *Lombardo v. Bhattacharyya*, 437 S.W.3d 658, 668 n.3 (Tex. App.—Dallas 2014, pet. denied). As described above, the trial court stated in its conclusion of law number 65, "By asserting factual claims in pleadings that the Plaintiff and his counsel knew were without evidentiary support or were not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Plaintiff and his counsel violated Tex. Civ. Prac. & Rem. Code Ch. 10." To the extent appellants' argument can be construed to challenge the trial court's conclusion of law number 65, appellants do not assert, and the record does not show, that conclusion is unsupported by the trial court's findings of fact. Further, appellants do not cite or specifically describe in their argument any findings of fact as to which there is "no evidence," nor do they provide any analysis respecting their "no evidence" contention other than the two sentences described above. We conclude appellants' fourth issue presents nothing for this Court's review. *See Lombardo*, 437 S.W.3d at 668 n.3 (concluding appellant's points objecting to unspecified findings of fact to which only a general objection was made were waived); *see also Helitrans Co. v. Rotocraft Leasing Co., LLC*, No.01-13-00145-CV, 2015 WL 593310, at *3 (Tex. App.—Houston [1st Dist.] Feb. 12, 2015, no pet.) (mem. op.) ("party asserting error on appeal bears the burden of showing that the record supports the contention raised and of specifying the place in the record where matters upon which it relies or of which it complains are shown").

We decide appellants' fourth issue against them.

### 4. Lack of Due Diligence (Issues 5, 16, & 17)

Next, we address together appellants' fifth, sixteenth, and seventeenth issues, all of which pertain to "due diligence." In their fifth issue, appellants assert "[t]he trial court erred in awarding Defendants' attorney's fees because there was no showing of a lack of due diligence or that Plaintiff did not make a reasonable inquiry before filing suit so as to support an award of

–18–

costs for inconvenience, harassment, and out-of-pocket expenses incurred or caused by the subject litigation." Specifically, appellants contend (1) "[t]o the contrary, there is abundant evidence that Plaintiff sought discovery from both the judgment debtor, [PCH], and Defendant Penhollow, Inc. before filing suit that was calculated to and, had either of those parties produced responsive documents, could have revealed evidence relevant to Plaintiff's claims in this suit" and (2) "[c]onsequently, Defendants' sanctions, if any, are limited to the reasonable expenses and attorney's fees incurred only in presenting its motion." In support of their argument, appellants cite (1) the excluded evidence and (2) Penhollow, Inc.'s discovery responses in the related cases described above.

In their sixteenth and seventeenth issues, appellants contend, respectively, (1) the trial court erred by refusing to admit the excluded evidence because those documents are "relevant to the issue of Plaintiff's due diligence in investigating his claims prior to filing suit" and "not hearsay because they were not offered to prove the truth of the matter asserted . . . , but rather to show that Plaintiff made a significant and sustained effort to obtain documents from the judgment debtors prior to filing suit" and (2) the trial court's refusal to admit the excluded evidence "probably caused the rendition of an improper judgment or prevented Appellant from properly presenting his case to this Court because it would negate an assertion that Plaintiff did not exercise diligence in investigating his claims prior to filing suit."

Appellees respond in part that the trial court acted within its discretion in reaching its finding that Powell failed to exercise due diligence because "Plaintiff's lack of due diligence and lack of reasonable inquiry is reflected in the allegations in his Petition which he knew were not accurate." Additionally, appellees assert the trial court's refusal to admit the excluded evidence "was appropriate due to a lack of relevance and hearsay, and in any event, did no harm to Appellant."

We review issues of statutory interpretation de novo. *See, e.g., City of Houston v. Bates*, 406 S.W.3d 539, 543 (Tex. 2013). When the text of the statute is clear and unambiguous, we apply the statute's words according to their plain and common meaning unless a contrary intention is apparent from the statute's context. *Id.* at 543–44; *see also TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) (undefined terms in a statute "are typically given their ordinary meaning").

As described above, section 10.002(c) provides in part that a party prevailing on a motion for sanctions under section 10.002 may be awarded the reasonable expenses and attorney's fees incurred in presenting or opposing the motion "and if no due diligence is shown the court may award to the prevailing party all costs for inconvenience, harassment, and out-of-pocket expenses incurred or caused by the subject litigation." TEX. CIV. PRAC. & REM. CODE ANN. § 10.002(c). "Due diligence" has been defined as "[t]he diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation." *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 808–09 (Tex. 2012) (citing BLACK'S LAW DICTIONARY (9th ed. 2009)); *see also Strickland v. Lake*, 357 S.W.2d 383, 384 (Tex. 1962) (the term 'diligence' is "relative and incapable of exact definition" and "[i]ts meaning must be determined by the circumstances of each case").

Although appellants do not specifically challenge any findings of fact or conclusions of law in their fifth issue, that issue can be fairly read to pertain to the trial court's finding of fact number 110, that "Plaintiff failed to exercise due diligence into the evidentiary support for his pleadings prior to filing them." However, to the extent appellants' argument can be construed to assert there is no evidence to support that finding, we cannot agree. Assuming without deciding that the trial court erred by refusing to admit the excluded evidence, the record shows (1) during discovery in related cases prior to this case, Powell requested PCH and Penhollow, Inc. to

produce business records of PCH; (2) those requested business records were not produced; (3) Powell testified in his December 19, 2012 deposition that he did not recall any indication that J.P., Y.P., or Penhollow, Inc. controlled PCH and, based on his observations, it appeared to him that S.P. "controlled and managed" PCH; and (4) Powell's amended petitions were filed on February 10, 2012; January 21, 2013; July 22, 2013; and August 7, 2013.

Appellants contend they "went above and beyond what could be considered due diligence" by conducting the above-described discovery prior to this case in an effort to obtain business records of PCH that "might have provided evidence" to support Powell's claims. However, nothing in the wording of section 10.002(c) indicates that the "due diligence" described in that section is necessarily satisfied by showing such discovery efforts. Rather, section 10.002(c), on its face, pertains to due diligence in avoiding conduct in violation of section 10.001, i.e. avoiding the filing of a frivolous pleading or motion. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.002(c). Appellants do not explain, and the record does not show, how their assertion of the allegations in question in Powell's petitions subsequent to their unsuccessful discovery efforts constituted the due diligence described in section 10.002(c). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.002(c). On this record, we conclude there was some evidence to support the trial court's finding respecting lack of due diligence.

We decide against appellants on their fifth, sixteenth, and seventeenth issues.

5. Invalid Bases for Sanctions (Issues 6 & 7)

Appellants' sixth and seventh issues each pertain to alleged invalid bases for the trial court's sanctions. In their sixth issue, appellants contend "[t]he trial court erred in apparently awarding monetary sanctions against a represented party (Mr. Powell) for a violation of [section 10.001(2)]." In their seventh issue, appellants contend "[t]he trial court erred in concluding that sanctions were justified based, at least in part, on an erroneous finding and conclusion that

–21–

Plaintiff's counsel admitted at a summary judgment hearing that there was no evidence of fraud by Defendants as a basis for piercing the corporate veil."

"Generally, an appellant must attack all independent bases or grounds that fully support an adverse ruling or judgment." *The Shops at Legacy (Inland) Ltd. P'ship v. Fine Autographs & Memorabilia Retail Stores, Inc.*, No. 05-14-00889-CV, 2015 WL 2201567, at *2 (Tex. App.—Dallas May 8, 2015, pet. filed) (mem. op.) (citing *Creech v. Columbia Med. Ctr. of Las Colinas Subsidiary, L.P.*, 411 S.W.3d 1, 6 (Tex. App.—Dallas 2013, no pet.); *Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 424 (Tex. App.—Dallas 2009, no pet.)). If an appellant fails to do so, we must affirm the ruling or judgment. *Id*. This proposition is based on the understanding that if an independent ground fully supports the complained-of ruling or judgment, but the appellant assigns no error to that independent ground, we must accept the validity of that unchallenged independent ground. *Id*. As a result, any error in the grounds challenged on appeal is harmless because the unchallenged ground fully supports the ruling or judgment. *Id*.; *see also* TEX. R. APP. P. 44.1(a).

Section 10.004(d) provides that a court may not award monetary sanctions against a represented party for a violation of section 10.001(2). TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(d); *see id*. § 10.001(2) (signing of pleading or motion constitutes certificate by signatory that "each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"). However, a section 10.004(d) challenge to a sanctions award cannot be sustained where at least one other basis for sanctions in the sanctions order supports the trial court's award of sanctions against the represented party. *Univ. of Tex. at Arlington v. Bishop*, 997 S.W.2d 350, 357 (Tex. App.—Fort Worth 1999, pet. denied); *see also Nath*, 446 S.W.3d at 367–68.

As described above, the record shows the trial court stated in part in the judgment (1) "good cause exists for the imposition of Sanctions on the Plaintiff and his counsel based on Chapter 10 of the Civil Practices and Remedies Code as set forth more specifically in the Findings of Fact and Conclusions of Law, including Plaintiff asserting frivolous factual claims in his Petition and filing a Motion to Consolidate and a Motion for Spoliation Sanctions which were not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law" and (2) "although the Plaintiff reviewed the Petition and approved the factual allegations contained therein, the Plaintiff did not take appropriate steps to investigate these claims and that they were not supported by evidence or likely to have evidentiary support after a reasonable inquiry." Additionally, the trial court stated in part in its conclusions of law:

63. The Petitions filed by Plaintiff and signed by his counsel . . . were groundless and brought in bad faith or groundless and brought for the purpose of harassment.

64. Good cause exists for sanctions against counsel for Plaintiff on the basis that the Petitions, Motion to Consolidate and Motion for Spoliation Sanctions were not asserted after an effort to conduct a good faith investigation into the involvement, if any, of the Defendants in PCH's business and when the Plaintiff and his counsel knew that the Defendants were not operating PCH, as evidenced by Plaintiff's own testimony to the contrary and when Plaintiff admitted that it had no basis to assert fraud against the Defendants in Defendant's Motion for Summary Judgment hearing. Further, good cause exists as evidenced by the Plaintiff's decision to "identify" experts it had not retained and to claim that Plaintiffs had a basis to "anticipate" their opinions and disclosed that the expert had reviewed documents the expert had never seen.

65. By asserting factual claims in pleadings that the Plaintiff and his counsel knew were without evidentiary support or were not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Plaintiff and his counsel violated Tex. Civ. Prac. & Rem. Code Ch. 10.

66. By asserting legal contentions in its Motion for Consolidation not warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law the Plaintiff and his counsel violated Tex. Civ. Prac. & Rem. Code Ch. 10.

67. By asserting legal contentions in its Motion for Sanctions not warranted by existing law or by a non-frivolous argument for the extension, modification or

reversal of existing law the Plaintiff and his counsel violated Tex. Civ. Prac. & Rem. Code Ch. 10.

68. Based on the violations of Tex. Civ. Prac. & Rem. Code Ch. 10, the Court finds that the Plaintiff and his counsel are jointly and severally liable to the Defendants for attorney fees incurred in this matter in the amount of $56,504.00 plus costs of appeal if applicable.

Further, in finding of fact number 29, the trial court stated, "Powell admitted through his counsel at a Motion for Summary Judgment hearing that Powell knew there was no evidence of fraud by Penhollow, Inc., John Penhollow, and Yvonne Penhollow."

As to the trial court's alleged violation of section 10.004(d), appellees contend any error in this regard is harmless because the trial court "cited multiple bases for sanctions against Plaintiff and Plaintiff's counsel, including violations of [sections 10.001(1) and 10.001(3)]." The record shows that while conclusions of law numbers 66 and 67 describe violations of section 10.001(2), for which no monetary sanctions can be awarded against Powell, conclusions of law numbers 63 and 65 describe violations of sections 10.001(1) and 10.001(3). As described above, appellants do not challenge any specific findings of fact underlying conclusion of law number 65. Further, no specific findings of fact underlying conclusion of law number 63 are challenged or otherwise addressed by appellants on appeal. On this record, we conclude bases other than section 10.001(2) support the trial court's award of sanctions against Powell. Therefore, any error by the trial court in awarding section 10.001(2) sanctions against Powell does not require reversal of trial court's the sanctions award. *See Bishop*, 997 S.W.2d at 357; *see also Nath*, 446 S.W.3d at 367–68.

As to the alleged admission by Plaintiff's counsel that there was no evidence of fraud by defendants, appellants argue in part "[t]here is no legally sufficient evidence or, in the alternative, factually sufficient evidence" to support finding of fact number 29 and conclusion of law number 64. Appellees respond that "[w]hile the prior testimony of Appellant's counsel to

–24–

the effect that Appellants had no evidence to show fraud by the Appellees was not properly before the Court, the Trial Court had multiple other acts by Appellants on which it relied in assessing sanctions and therefore sanctions remain appropriate."

Even assuming without deciding there was insufficient evidence to support finding of fact number 29, the record shows that finding was not the sole basis for the trial court's conclusion as to "good cause" in conclusion of law number 64. Further, in light of our conclusions above respecting appellants' fourth and ninth issues, conclusion of law number 64 is not the sole basis for the trial court's imposition of sanctions against Webb. Because appellants failed to challenge all of the trial court's bases for sanctions against Webb, they cannot show reversible error. *See The Shops at Legacy (Inland) Ltd. P'ship*, 2015 WL 2201567, at *2; *see also Lugo v. St. Julian*, No. 05–10–01062–CV, 2012 WL 2160244, at *2 (Tex. App.—Dallas June 14, 2012, no pet.) (mem. op.) (concluding appellants could not show reversible error when they failed to challenge all bases for sanctions); *In re H.R.H.*, No. 05–07–01148–CV, 2008 WL 3984055, at *5 (Tex. App.—Dallas Aug. 29, 2008, no pet.) (mem. op.) (affirming sanctions when appellant failed to attack all grounds in order); *Miaoulis v. AmegyBank*, No. 01–11–00959–CV, 2012 WL 2159375, at *5 (Tex. App.—Houston [1st Dist.] June 14, 2012, no pet.) (mem. op.) (same).

We decides against appellants on their sixth and seventh issues.

### 6. Motion for Sanctions (Issues 1, 2, & 3)

In their first three issues, appellants contend, respectively, as follows: (1) "[t]he trial court erred in concluding that sanctions were justified for any pleading or motion filed after Appellees'/Defendants' counterclaim because there was no motion to support the imposition of sanctions with respect to any pleading or motion filed after [appellees' counterclaim]"; (2) "[t]he trial court erred in awarding sanctions against Powell and Webb because there was no motion to support the imposition of sanctions with respect to Defendants' complaints regarding Plaintiff's

–25–

expert designation,[7] Motion to Consolidate, and Motion for Spoliation Sanctions, each of which were signed and filed well after the Defendants' counterclaim" and (3) "[t]he trial court erred in assessing sanctions against Plaintiff's attorney Webb because there was no motion seeking such sanctions."

Although appellants assert repeatedly in those three issues and their corresponding argument that there was "no motion" for sanctions other than defendants' counterclaim, appellants state in their reply brief in this Court that (1) at the conclusion of the trial in this case, defendants "moved for sanctions" and (2) "[d]efendants' attorney's oral motion" at trial failed to mention Powell's motions for spoliation sanctions and consolidation. Further, in their appellate argument pertaining to each of those three issues, appellants contend the alleged lack of a motion resulted in Powell and Webb not being "afforded notice of the allegations and a reasonable opportunity to respond" as required by section 10.003. Based on those assertions in their appellate briefing, we construe appellants' first three issues to assert that a motion other than the counterclaim and "defendants' attorney's oral motion" was required in order to afford them adequate notice and opportunity to respond.

Appellees argue in part (1) the counterclaim applied to subsequent petitions asserting the same allegations as the first amended original petition; (2) even if the counterclaim did not apply to Powell's amended petitions and subsequent motions, that issue was "waived" when Powell did not timely object in the trial court; and (3) the trial court had authority to sanction Webb "for filing baseless legal arguments."

Lack of notice pursuant to section 10.003 is an issue that can be waived by failure to timely object. *See Low*, 221 S.W.3d at 618–19; *West v. Northstar Fin. Corp.*, 2-08-447-CV,

---

[7] We concluded above the record does not show the trial court "based" its sanctions on Powell's expert designation. Therefore, we need not address the portion of appellants' second issue respecting Powell's expert designation.

2010 WL 851415, at *12 (Tex. App.—Fort Worth Mar. 11, 2010, pet. denied) (mem. op.). The proper method to preserve a notice complaint is to "bring the lack of adequate notice to the attention of the trial court at the hearing, object to the hearing going forward, and/or move for a continuance." *Low*, 221 S.W.3d at 618.

As to their first and second issues, appellants contend in their appellate reply brief that "[a]ppellees' waiver argument is misguided" because appellants timely preserved those two issues for appellate review by raising them in Powell's October 3, 2013 motion to vacate the sanctions order. Additionally, in their first motion for rehearing in this Court, appellants assert such preservation was timely because (1) the parties' post-trial briefs respecting sanctions "were filed on the same day"; (2) "[a]ppellees' brief was served by mail so that it was not received until after [Powell] filed his brief"; and (3) "[c]onsequently, the first opportunity Appellants had to raise objections to items first raised in Appellee's brief was [Powell's] Motion to Vacate Sanctions Order." Further, appellants assert in their first motion for rehearing that "[a]lthough the oral motion does mention 'any petition that came after November 21st, 2012,' that motion was made under Texas Rule of Civil Procedure 13."

As to lack of notice of sanctions claimed against Webb, appellants contend in their reply brief on appeal that "[a]ppellees' waiver argument fails because they do not identify at what point the attorney was provided notice (and, in fact, no such evidence exists) so that he would have known an objection was necessary." Additionally, in their first motion for rehearing in this Court, appellants assert in part that "the first mention" of a claim for sanctions against Webb, and "thus, first opportunity to object," came "in Appellees' post-trial brief received by Appellants on September 3, 2013."

The record does not show any objection to lack of notice respecting sanctions against Webb in Powell's motion to vacate the sanctions order. As described above, appellants

acknowledge they had notice appellees were seeking sanctions against Webb at the time the motion to vacate the sanctions order was filed.[8] Accordingly, on this record, we conclude appellants did not preserve their third issue for this Court's review. *See id.*

As to appellants' alleged lack of notice respecting their post-counterclaim amended pleadings as a basis for sanctions, the record shows counsel for appellees stated in part at trial, "So for any petition that came after November 21st, 2012, clearly those petitions were not—were based on facts that were known to be inaccurate." As described above, appellants contend "that motion was made under Texas Rule of Civil Procedure 13." However, the portion of appellees' motion at trial pertaining to petitions filed after November 2012 is not specifically limited to that rule. Further, as described above, the record shows appellants specifically addressed Chapter 10 as a basis for sanctions in their post-trial brief. On this record, we cannot agree with appellants that they timely preserved their objection to lack of notice respecting sanctions based on Powell's pleadings filed after the counterclaim. *See id.*

Finally, as to appellants' complaint respecting the lack of a motion to support the imposition of sanctions based on Powell's expert designation, motion to consolidate, and motion for spoliation sanctions, we concluded above the record does not show the trial court erred respecting sanctions based on Powell's expert designation. Therefore, we need not address the portion of appellants' second issue respecting notice as to that basis. *See* TEX. R. APP. P. 44.1(a). Further, in light of our conclusions above that bases other than the motion to consolidate and motion for spoliation sanctions support the judgment in question, the record does not show how any error respecting notice as to those bases would constitute reversible error. *See id.*

We decide appellants' first, second, and third issues against them.

---

[8] Additionally, as described above, the record shows Powell asserted in his August 30, 2013 post-trial sanctions brief that "the Defendants herein attempt to convince this Court that [Powell] or his attorney should pay all of the Defendant's attorney's fees and expenses."

7. Reasonableness of Attorney's Fees (Issues 12 & 13)

In their twelfth and thirteenth issues, appellants assert the trial court erred by awarding attorney's fees as sanctions (1) "in the absence of any finding that the amount of the attorney's fees was reasonable" and (2) "with no evidence that such fees were reasonable." We address those two issues together.

Appellants contend in part that "[w]hile [Murphy's] testimony does include the word "reasonable" or derivations thereof, merely intoning the word "reasonable" at some point during one's testimony does not establish the fees' reasonableness." According to appellants, "[t]here is legally insufficient evidence . . . that the attorney's fees awarded were reasonable" because there was "no testimony that the number of hours expended or hourly rate were reasonable," "no testimony regarding lodestar adjustments," "no testimony that the total amount of fees was reasonable (other than Supreme Court hearing)" and "no evidence of contemporaneous time records."[9]

Appellees respond in part that the trial court "had evidence the attorney fees were reasonable and found the fees reasonable."

The reasonableness of proposed attorney's fees is a question of fact. *See, e.g., In re S.E.C.*, No. 05-08-00781-CV, 2009 WL 3353624, at *2 (Tex. App.—Dallas Oct. 20, 2009, no pet.) (mem. op.) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998)). Factors to consider in determining reasonable attorney's fees are the time and labor required; the likelihood that employment will preclude other opportunities; the customary fee charged for similar legal services; the amount involved and the results obtained; the time limitations imposed; the nature and length of the attorney-client relationship; the experience, reputation, and ability of the lawyer

---

[9] Further, appellants contend "in the alternative" that there is "factually insufficient evidence that the attorney's fees awarded were reasonable." Appellants do not explain or describe how the evidence respecting the attorney's fees in question is factually insufficient. We conclude appellants' argument respecting factual insufficiency as to the reasonableness of appellees' attorney's fees presents nothing for this Court's review. *See* TEX. R. APP. P. 38.1(i).

to perform the services; and whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Flatrolled Steel, Inc. v. Jones*, No. 05- 04-01175-CV, 2005 WL 1405742, at *1 (Tex. App.—Dallas June 16, 2005, no pet.) (mem. op) (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)). However, it is not mandatory that the record include evidence on each of these factors. *Id.*; *accord Brazos Elec. Power Co-op, Inc. v. Weber*, 238 S.W.3d 582, 586 (Tex. App.—Dallas 2007, no pet.). "[T]he court can also look at the entire record, the evidence presented on reasonableness, the amount in controversy, common knowledge of the participants as lawyers and judges, and the relative success of the parties." *Flatrolled Steel, Inc.*, 2005 WL 1405742, at *1; *see also Tull v. Tull*, 159 S.W.3d 758, 761 n.2 (Tex. App.—Dallas 2005, no pet.) (testifying attorney's failure to use word "reasonable" in reference to actual attorney's fees "goes to the weight of the evidence, and does not preclude an award of attorney's fees").

Pursuant to Texas Rule of Civil Procedure 299, a judgment "may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact. TEX. R. CIV. P. 299. However, "when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment." *Id.*

In the case before us, the trial court's finding of fact number 106 states that the services rendered by appellees' attorney were "reasonable and necessary" and finding of fact number 107 states that the fees charged by appellees' attorney were $56,504.00. Although the record does not contain a specific finding by the trial court that the attorney's fees in question were "reasonable," we conclude finding of fact number 106 constitutes an element as to the reasonableness of those fees. *See id.*; *see also Flatrolled Steel, Inc.*, 2005 WL 1405742, at *1.

Therefore, omitted elements as to the reasonableness of those fees "will be supplied by presumption in support of the judgment" if "supported by evidence." TEX. R. CIV. P. 299.

As described above, appellants specifically complain of lack of (1) testimony that "the number of hours expended or hourly rate were reasonable" or that "the total amount of fees was reasonable" and (2) lack of "evidence of contemporaneous time records."[10] However, it is not mandatory that the record include evidence as to each of those factors. *See Flatrolled Steel, Inc.*, 2005 WL 1405742, at *1; *Brazos Elec. Power Co-op, Inc.*, 238 S.W.3d at 586. The record shows Murphy testified as to his hourly rate, stated he had "considered the factors enumerated by the Texas Supreme Court in determining the reasonableness of fees," and described the specific tasks that "the usual reasonable fee for handling this type of case by similar firms in Collin County would include." Additionally, the trial court was entitled to consider the entire record, the amount in controversy, common knowledge of the participants as lawyers and judges, and the relative success of the parties. *See Flatrolled Steel, Inc.*, 2005 WL 1405742, at *1. On this record, we cannot agree with appellants' contention that the evidence respecting the reasonableness of the attorney's fees in question is legally insufficient.[11]

We decide against appellants on their twelfth and thirteenth issues.

### 8. Consideration of Lesser Sanctions (Issue 11)

---

[10] Additionally, appellants complain as to lack of "testimony regarding lodestar adjustments." *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760–61 (Tex. 2012) (describing "lodestar method" of proving attorney's fees). However, the lodestar method is required only in certain types of cases. *See Metroplex Mailing Servs. LLC v. Donnelley & Sons Co.*, 410 S.W.3d 889, 900 (Tex. App.—Dallas 2013, no pet.). To the extent appellants' argument can be construed to contend the lodestar method of proving attorney's fees is applicable in cases involving attorney's fees as Chapter 10 sanctions, appellants cite no authority to support that position and we have found none. *Cf. Bennett v. Reynolds,* No. 03-12-00568-CV, 2014 WL 4179452, at *15 (Tex. App.—Austin, Aug. 22, 2014, pet. denied) (mem. op.) (concluding lodestar requirements do not apply to Chapter 10 sanctions based on attorney's fees). Therefore, we do not apply the lodestar method in this case.

[11] We note that several of our sister courts of appeals have concluded proof of the necessity or reasonableness of attorney's fees is not required when the fees are assessed as sanctions. *See, e.g., Sellers v. Gomez*, 281 S.W.3d 108, 116 (Tex. App.—El Paso 2008, pet. denied) ("[r]ather, the amount of attorney's fees awarded as sanctions is within the sound discretion of the trial court"); *accord Price v. Schroeder*, No. 03-07-00364-CV, 2010 WL 2010792, at *15 n.9 (Tex. App.—Austin May 20, 2010, no pet.) (mem. op.). The parties in this case do not cite or address those cases. In light of our conclusion above that the evidence in the record is legally sufficient to support the reasonableness of the attorney's fees in question, we need not address whether proof of the reasonableness of such fees is unnecessary.

In their eleventh issue, appellants assert the trial court erred by "not including in its sanctions order a discussion of its consideration of lesser sanctions." According to appellants, a sanctions order must reflect the trial court's "consideration and ruling out of lesser sanctions." In support of their argument, appellants cite *Low*, 221 S.W.3d at 620.

Appellees contend the requirement that the trial court "demonstrate that it considered lesser sanctions" does not apply in cases in which attorney's fees are awarded as sanctions pursuant to Chapter 10, but rather is limited to cases involving certain discovery sanctions. Additionally, appellees argue section 10.002(c) specifically provides that in Chapter 10 cases where, as here, no due diligence is shown, "the court may award to the prevailing party all costs of inconvenience, harassment, and out-of-pocket expenses incurred or caused by the subject litigation."

In the portion of *Low* cited by appellants, the supreme court stated it has held a trial court is "required to explain that it considered lesser sanctions before imposing severe, 'death penalty' sanctions." *Id.* *Low* did not specifically address the consideration of lesser sanctions in cases other than those involving death penalty sanctions. Subsequent to *Low*, several of our sister courts of appeals have concluded that in Chapter 10 cases not involving death penalty sanctions, a trial court's order awarding attorney's fees as sanctions need not show consideration of lesser sanctions. *See Sellers*, 281 S.W.3d at 115; *Asafi v. Rauscher*, No. 14-10-00606-CV, 2011 WL 4031015, at *10 n.12 (Tex. App.—Houston [14th Dist.] Sept. 13, 2011, pet. denied) (mem. op.). However, we need not reach that question in order to decide appellants' issue. The record shows appellants' complaint respecting consideration of "lesser sanctions" was not raised in the trial court. Consequently, that complaint presents nothing for this Court's review. *See Werley v. Cannon*, 344 S.W.3d 527, 535 (Tex. App.—El Paso 2011, no pet.) (failure to object that trial court did not consider "less stringent sanctions" waived complaint on appeal); *see also The*

*Shops at Legacy (Inland) Ltd. P'ship*, 2015 WL 2201567, at \*2 (complaints respecting determination of amount of sanctions that were not raised in motion to modify, correct, or reform sanctions order were not preserved for appeal).

We decide against appellants on their eleventh issue.[12]

### 9. Specificity of Sanctions Order (Issue 10)

In their tenth issue, appellants contend the trial court erred by "rendering a sanctions order that was insufficiently specific." According to appellants, (1) "by employing an 'everything and the kitchen sink' approach, [the judgment] lacks the 'why, when, and how' necessary to describe the conduct with sufficient particularity and the basis for the sanction imposed"; (2) the judgment "lacks any discussion or identification of . . . how the amount of sanctions was reasonably related to the alleged violation"; and (3) "[t]he absence of an explanation of how a trial court determined an amount of sanctions when those sanctions are especially severe is inadequate" (citing *Low*, 221 S.W.3d at 620).

In their opening brief in this Court, appellants' only specific complaints purporting to support the above contentions are as to conclusions of law numbers 63, 64, and 68, which are quoted in full above.[13] Additionally, in a section of their reply brief in this Court that we construe to address "specificity" of the judgment,[14] appellants argue for the first time as follows:

---

[12] To the extent appellants' reply brief in this Court can be construed to assert additional arguments respecting this issue that were not asserted in appellants' initial appellate brief, we conclude those arguments present nothing for this Court's review. *See Humphries v. Advanced Print Media*, 339 S.W.3d 206, 208 (Tex. App.—Dallas 2011, no pet.); *Dallas Cnty. v. Gonzales*, 183 S.W.3d 94, 104 (Tex. App.—Dallas 2006, pet. denied).

[13] Appellants contend each of those three conclusions fails to identify specific underlying facts supporting the conclusions. However, in their appellate argument, appellants quote those conclusions only in part and do not address the unquoted portions. Additionally, the judgment states it "incorporates herein" all of the findings of fact and conclusions of law, which it states were "executed contemporaneously" with the judgment. Because appellants' issue in question complains as to lack of specificity of the "sanctions order," we decline to limit our analysis to the specificity of portions of three conclusions of law.

[14] Appellants list their seventeen issues numerically in the table of contents of their initial appellate brief. However, while the argument portions of their initial brief and reply brief are divided into numbered sections, those section numbers do not correspond to the issue numbers, nor do appellants refer to the issues numerically in their arguments. Two sections of appellants' reply brief, sections VI and VII, contain arguments addressing "specificity." The quote set out above is from section VII of the reply brief. However, because the material content of sections VI and VII address "specificity," we consider those arguments to address their tenth issue. *See* TEX. R. APP. P. 38.9 (briefing rules to be construed liberally).

The "nonexclusive list" of factors courts should consider in determining sanctions set out in *Low* includes: "The degree to which the offended person's own behavior caused the expenses for which recovery is sought." Pursuant to Texas Business Organizations Code Sections 3.151, 3.153, 101.501, and 101.502, Penhollow, Inc. had a right to examine the record, books, and records of accounts of [PCH]. [J.P.] did nothing to obtain the documents, although they were requested by Plaintiff. In this case, the Appellees' own conduct, as the alleged "offended persons," in taking no action to request or obtain financial documents and books/records of accounts from [PCH] should have been taken into account in determining sanctions. The trial court's order does not indicate that it was considered.

(citations omitted). Finally, in their second motion for rehearing filed in this Court, appellants assert for the first time (1) "[t]he sanctions order in this case does not reveal that the trial court considered any of the factors cited in *Low*, other than the amount of attorney's fees 'charged,'" and (2) "[t]he trial court abused its discretion in not more specifically identifying the basis for the amount of sanctions imposed."

Appellees respond (1) the trial court's judgment "by itself is more specific than other sanctions orders which have been upheld by this Court" and, further, "incorporated" the trial court's findings of fact and conclusions of law, which "describe sanctionable conduct" and (2) appellants complain as to only a few specific conclusions of law "in isolation," and "ignore the totality of the document which provided detailed notice of actionable conduct."

We now consider the *Low* case. *See* 221 S.W.3d at 609. In that case, a widow sued two physicians, Robert Low and Stephen Smith, for damages relating to her husband's death. *See id.* at 613. Low and Smith filed motions for sanctions against the widow's attorney, Thomas J. Henry, for alleged violations of Chapter 10. The widow's lawsuit was subsequently nonsuited. Following a hearing on the physicians' motions, the trial court ordered Henry to pay $25,000 in sanctions on each motion, for a total of $50,000. *Id.* Those penalties were "not based on expenses, court costs, or attorney's fees." *Id.* at 614. The court of appeals reversed the sanctions

award, concluding (1) the evidence did not support sanctions under Chapter 10 and (2) the trial court's order failed to meet the specificity requirements of that chapter. *Id*.

The supreme court disagreed with the court of appeals in part. *Id*. at 619–20. Specifically, the supreme court concluded the evidence supported an award of sanctions under Chapter 10. However, as to the amount of the sanctions against Henry, that court stated in part, "Although this Court has not specifically identified factors for a trial court to consider when assessing penalties under Chapter 10, the absence of an explanation of how a trial court determined that amount of sanctions when those sanctions are especially severe is inadequate." *Id*. at 620. Then, quoting from a 1988 report of the American Bar Association, the supreme court described a "nonexclusive list" of factors "helpful in guiding the often intangible process of determining a penalty for sanctionable behavior."[15] *Id*. Further, that court stated,

> Although we do not require a trial court to address all of the factors listed in the report to explain the basis of a monetary sanction under Chapter 10, it should consider relevant factors in assessing the amount of the sanction. In addition, the determination of the amount of a penalty to be assessed under Chapter 10, which is not limited to attorney's fees and costs, should nevertheless begin with an acknowledgement of the costs and fees incurred because of the sanctionable conduct. This provides a monetary guidepost of the impact of the conduct on the party seeking sanctions and the burden on the court system.

*Id*. at 621. The supreme court observed that the physicians' testimony did not quantify the expense of claimed loss of work time or identify any other out-of-pocket expenses. *Id*. at 621. That court concluded (1) "we cannot determine the basis of the $50,000 penalty on this record" and (2) "the trial court abused its discretion in not more specifically identifying the basis for

---

[15] The factors described by the supreme court are as follows: (1) the good faith or bad faith of the offender; (2) the degree of willfulness, vindictiveness, negligence, or frivolousness involved in the offense; (3) the knowledge, experience, and expertise of the offender; (4) any prior history of sanctionable conduct on the part of the offender; (5) the reasonableness and necessity of the out-of-pocket expenses incurred by the offended person as a result of the misconduct; (6) the nature and extent of prejudice, apart from out-of-pocket expenses, suffered by the offended person as a result of the misconduct; (7) the relative culpability of client and counsel, and the impact on their privileged relationship of an inquiry into that area; (8) the risk of chilling the specific type of litigation involved; (9) the impact of the sanction on the offender, including the offender's ability to pay a monetary sanction; (10) the impact of the sanction on the offended party, including the offended person's need for compensation; (11) the relative magnitude of sanction necessary to achieve the goal or goals of the sanction; (12) burdens on the court system attributable to the misconduct, including consumption of judicial time and incurrence of juror fees and other court costs; and (13) the degree to which the offended person's own behavior caused the expenses for which recovery is sought. *Id*.

imposing a $50,000 penalty under chapter 10." *Id*. at 621–22. The judgment of the court of appeals was reversed and the case was remanded to the trial court to allow the parties to present further evidence and allow the trial court "to consider the amount of the penalty imposed in light of the guidelines in this opinion." *Id*.

To the extent appellants in the case before us contend the trial court did not comply with the requirements of *Low*, we cannot agree. First, appellants cite both *Low* and *Nath* in support of their position first alleged in their reply brief that the trial court erred because it did not indicate in the judgment that it considered appellees' conduct in "taking no action to request or obtain" financial records of PCH.[16] *See Nath*, 446 S.W.3d at 371–72; *Low*, 221 S.W.3d at 620. In the *Nath* case, the supreme court addressed a complaint that had been raised in the trial court respecting "excessiveness" of a sanctions award of more than $1.3 million in attorney's fees against the plaintiff. *Nath*, 446 S.W.3d at 371. The supreme court remanded the case to the trial court for reconsideration of the amount of the sanctions award because, when assessing sanctions, the trial court "failed to address" the *Low* factor of "the degree to which the offended person's own behavior caused the expenses for which recovery is sought," which factor the supreme court stated was relevant "[i]n the context of this matter." *Id*. at 372. The supreme court reasoned in part that "if issues asserted in pleadings are revealed to be frivolous, and the defending party delays moving for summary judgment and sanctions, the defending party adopts some responsibility for the overall increase in litigation costs." *Id*. Further, the supreme court stated (1) the record showed defendants waited almost four years to file their motion for summary judgment and moved for sanctions only after obtaining final judgment and (2) "a defending party cannot arbitrarily shift the entirety of its costs on its adversary simply because it

---

[16] In their reply brief in this Court, appellants cited the Fourteenth Court of Appeals' opinion in *Nath*, which was the most recent opinion in that case at that time. Subsequently, appellants filed a February 11, 2015 pre-submission letter brief in this Court citing the supreme court's opinion in *Nath*.

ultimately prevails on a motion for sanctions." *Id*. The supreme court concluded the *Low* factor respecting "the degree to which [defendants] caused their attorney's fees" was "made relevant by the protracted nature of this litigation." *Id*.

We cannot conclude that the *Low* principle, as elucidated by *Nath*, requires us to decide in appellants' favor based on their "specificity" complaints in this case. The supreme court in *Nath* addressed Nath's claim of "excessiveness," concluding that argument was preserved in the trial court. *See id*. at 364–65. Additionally, the supreme court concluded the *Low* factor of "the degree to which the offended person's own behavior caused the expenses for which recovery is sought" was "made relevant by the protracted nature" of the litigation in *Nath* because delays by the defendants in moving for summary judgment and sanctions could indicate "some responsibility for the overall increase in litigation costs." *Id*. at 372.

In the case before us, appellants' argument in their reply brief respecting *Nath* consists, in its entirety, of the single paragraph quoted above. That argument does not (1) allege or mention "excessiveness" of the attorney's fees sanction or (2) demonstrate or explain in any way how appellees' alleged conduct "in taking no action to request or obtain financial documents and books/records" from PCH "caused the expenses" in question or is somehow comparable to what the supreme court saw as Nath's inaction and delays in moving for summary judgment or sanctions on meritless claims. *See id*. Further, appellants (1) cite no portion of the record, and we have found none, showing they raised either of those two matters in the trial court and (2) provide no further argument respecting the applicability of *Nath*. On this record, we cannot agree with appellants' position that *Nath* is instructive in this case as to the relevance of the *Low* factor in question.

Second, unlike *Low*, the record in this case does not show "[t]he absence of an explanation of how [the] trial court determined an amount of sanctions." *Low*, 221 S.W.3d at

–37–

620. Rather, the trial court in this case specifically (1) stated in the judgment that the "most appropriate sanction" is that Powell and his counsel be required to pay the attorney's fees incurred by the defendants in defending the baseless claims asserted by Powell and (2) awarded attorney's fees as sanctions pursuant to Chapter 10. Further, as described above, the record shows the trial court heard evidence as to defendants' attorney's fees and made findings of fact and conclusions of law respecting the amounts of those attorney's fees in the trial court and on potential appeals. Thus, as required by *Low*, the trial court began its determination of the amount of the penalty to be assessed under Chapter 10 with an acknowledgement of the "fees incurred because of the sanctionable conduct." *Id*. at 621. This provided "a monetary guidepost of the impact of the conduct on the party seeking sanctions." *Id*.

In the judgment complained of, the trial court (1) crossed out portions of the judgment that would have resulted in sanctions equal to the total amount of attorney's fees the trial court found in its findings of fact were supported by the evidence and (2) interlineated amounts that total approximately one-half of the amount of attorney's fees incurred by appellees as identified in the findings of fact. Appellants cite no authority, and we have found none, to support their general and broadly stated position that a trial court must "more specifically identify[] the basis for the amount of sanctions" under such circumstances. *Cf. Brantley v. Etter*, 677 S.W.2d 503, 504 (Tex. 1984) ("the amount of attorney's fees awarded as sanctions for discovery abuse is solely within the sound discretion of the trial judge"); *Glass v. Glass*, 826 S.W.2d 683, 688 (Tex. App.—Texarkana 1992, writ denied) (amount of attorney fees to be awarded as sanctions for violation of Texas Rule of Civil Procedure 13 "is solely within the discretion of the trial court"). Further, other than in their argument citing *Nath* that we rejected above, appellants do not address any particular *Low* factors to explain the particular lack of specificity or describe how

any of those factors pertain to the alleged lack of "specificity" as to the amount of attorney's fees in the trial court's judgment.

Finally, in addition to *Low* and *Nath*, the authority cited by appellants in support of their specificity complaint includes two cases from this Court in which sanctions orders were reversed for lack of specificity. However, each of those cases involved sanctions orders that were not as descriptive as the judgment in question. *See Sell v. Peters Fine Art, Ltd.*, 390 S.W.3d 622, 624–25 (Tex. App.—Dallas 2012, no pet.) (involving order that stated only that defendant shall recover attorney's fees from plaintiff for plaintiff's "violation of [Chapter 10] relating to the plaintiff's claims brought against the defendant pursuant to the Deceptive Trade Practices Act"); *Amrhein v. La Madeline, Inc.*, No. 05-08-00350-CV, 2009 WL 1883737, at *3 (Tex. App.—Dallas June 30, 2009, pet. denied) (mem. op.) (involving order that merely ordered plaintiff "sanctioned the additional amount of $10,000 for filing frivolous pleading in violation of . . . [Chapter 10]"). Therefore, we do not find those cases instructive. We emphasize that the record before us shows the trial court's judgment and the "incorporated" findings of fact and conclusions of law specifically list the claims asserted by Powell that were described by the trial court as "baseless" and describe how Chapter 10 was violated. We conclude appellants do not explain, and the record does not show, how the judgment in this case, in its entirety, does not meet the specificity requirements of Chapter 10. *See Law Offices of Windle Turley, P.C. v. French*, 164 S.W.3d 487, 492 (Tex. App.—Dallas 2005, no pet.) (rejecting specificity challenge where order described act that violated section 10.001(1)); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 10.005. On this record, we cannot agree with appellants that the trial court "render[ed] a sanctions order that was insufficiently specific."

We decide appellants' tenth issue against them.

### 10. Amount of Attorney's Fees Awarded (Issue 15)

In their fifteenth issue, appellants assert "[t]he amount of attorney's fees is inconsistent between the findings of fact and the judgment." Further, appellants argue that "[a]s it is apparent that the trial judge modified the amounts in the Judgment, but evidently overlooked the corresponding amounts in the Findings of Fact, the Findings of Fact should be similarly modified so that the amounts are consistent." In support of their argument, appellants cite findings of fact numbers 107 and 108.

Appellees assert they "concur with Appellants that the Judge interlineated the assessed sanctions in the Judgment, and it appears that the Court intended the interlineation to control."

As described above, in finding of fact number 107, the trial court found "[t]he fees charged by Abernathy, Roeder, Boyd & Joplin, PC in defending [J.P.], [Y.P.], and Penhollow, Inc. were $56,504.00." In finding of fact number 108, the trial court found "in the event of an appeal to the Court of Appeals, if the appeal is unsuccessful as to Plaintiff or Plaintiff's counsel, the Defendants will be further entitled to recover from Plaintiff and/or Plaintiff's counsel Thirty Thousand Dollars and No Cents ($30,000.00) as a reasonable attorney's fee regardless of the identity of the appellant/petitioner; in the event of making or responding to a petition for review to the Supreme Court of Texas, the Defendants will be entitled to recover from Plaintiff or Plaintiff's counsel an additional Twenty Thousand Dollars and No Cents ($20,000.00) as a reasonable attorney's fee if the petition is unsuccessful as to Plaintiff or Plaintiff's counsel regardless of the identity of the appellant/petitioner; and in the event a petition for review is granted by the Supreme Court of Texas and the appeal as to Plaintiff or Plaintiff's counsel is unsuccessful, the Defendants will be entitled to an additional Ten Thousand Dollars and No Cents ($10,000.00) as a reasonable attorney's fee regardless of the identity of the appellant/petitioner." The judgment provided (1) Powell and Webb are jointly and severally liable to appellees for attorney's fees in the amount of $26,504 and (2) "in the event the Plaintiff

appeals this judgment, the Defendants shall have and recover from the Plaintiff an additional $20,000 for attorney's fees in the event of appeal of this matter to the appropriate appellant [sic] court, $10,000 in the event of Petition for Review filed with the Texas Supreme Court, and an additional $5,000 in the event the Petition is granted and there is an appeal to the Texas Supreme Court." Additionally, the judgment stated it was "executed contemporaneously" with the findings of fact and conclusions of law.

Because finding of fact number 107 does not address the amount to be awarded to appellees, we cannot agree with appellants that it is inconsistent with the trial court's judgment. *See Mobile Housing, Inc. v. M.F. Stone*, 490 S.W.2d 611, 614 (Tex. Civ. App.—Dallas 1973, no writ) (findings of fact will be construed to be in harmony with the judgment and support it). As to finding of fact number 108, the record does not show appellants' complaint respecting inconsistency was asserted in the trial court. *See* TEX. R. APP. P. 33.1. Moreover, both sides assert on appeal that it is apparent that the trial judge intended the handwritten numbers in the judgment to be controlling over the numbers in the findings of fact. *See Moore v. Jet Stream Investments, Ltd.*, 315 S.W.3d 195, 209 n.32 (Tex. App.—Texarkana 2010, pet. denied) ("there is no authority to support the proposition that prejudgment findings of fact and conclusions of law are controlling if they conflict with a subsequent judgment"). Appellants do not explain, and the record does not show, how the inconsistency alleged by them resulted in any error in the trial court's judgment.[17]

We decide appellants' fifteenth issue against them.

### 11. Attorney's Fees Contingent on Successful Appeal (Issue 14)

---

[17] Although appellants contend the findings of fact should be "modified so that the amounts are consistent," appellants cite no authority, and we have found none, allowing this Court to modify a trial court's findings of fact. *Cf.* TEX. R. APP. P. 43.2 (describing types of judgments courts of appeals may render).

Finally, in their fourteenth issue, appellants contend the trial court erred by not making its award of appellate attorney's fees to appellees contingent upon their success on appeal. Appellants assert "[c]onsequently, the judgment should be modified to make the award contingent upon Appellee's success on appeal."

Appellees respond that while appellants are correct that attorney's fees for an appeal should be conditional, (1) the judgment incorporates finding of fact number 108 and (2) that finding of fact provides that the recovery of appellate attorney's fees is conditional. Further, appellees assert that "[t]o the extent that the Court finds that the reference to conditional appellate attorney fees in [finding of fact number 108] is not sufficient, the Appellees agree that the Judgment should be modified to make appellate attorney fees conditional on success."

"[A]ny award of attorney's fees on appeal must be conditioned on the receiving party's success." *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 205 (Tex. App.—Austin 1992, no writ); *accord Hoefker v. Elgohary*, 248 S.W.3d 326, 332 (Tex. App.—Houston [1st Dist.] 2007, no pet.). In the case before us, the record demonstrates, and the parties do not dispute, that the trial court intended that the appellate attorney's fees awarded were contingent upon appellees' success on appeal. "We have the authority to modify incorrect judgments when the necessary information is available for us to do so." *Mullins v. Mullins*, 202 S.W.3d 869, 878 (Tex. App.—Dallas 2006, pet. denied). On this record, we conclude the trial court's judgment should be modified to state that all appellate attorney's fees awarded are contingent upon appellees' success in the appeal to which the fees pertain.

We decide appellants' fourteenth issue in their favor.

### III. CONCLUSION

We decide in favor of appellants on their fourteenth issue. Appellants' remaining issues are decided against them.

We modify the trial court's judgment to state that all appellate attorney's fees awarded are contingent upon appellees' success in the appeal to which the fees pertain. The trial court's judgment is affirmed as modified.

131653HF.P05

/ Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

THOMAS ALLEN POWELL D/B/A
ARCHITECTURE UNLIMITED AND J.
KEITH WEBB, Appellants

No. 05-13-01653-CV     V.

PENHOLLOW, INC., JOHN O.
PENHOLLOW, AND YVONNE L.
PENHOLLOW, Appellees

On Appeal from the 429th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 429-03464-2011.
Opinion delivered by Justice Lang, Justices
Bridges and Schenck participating.

We **WITHDRAW** our opinion and **VACATE** our judgment of July 28, 2015. This is now the judgment of the Court.

In accordance with this Court's opinion of this date, the judgment of the trial court is **MODIFIED** to state that all appellate attorney's fees awarded are contingent upon appellees' success in the appeal to which the fees pertain.

It is **ORDERED** that, as modified, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees PENHOLLOW, INC., JOHN O. PENHOLLOW, AND YVONNE L. PENHOLLOW recover their costs of this appeal from appellants THOMAS ALLEN POWELL D/B/A ARCHITECTURE UNLIMITED AND J. KEITH WEBB.

Judgment entered this 21st day of September, 2015.